[No. 18408.   In Bank.—August 20, 1896.]

100:82 Fed 56

# ALTOONA QUICKSILVER MINING COMPANY, APPELLANT, v. INTEGRAL QUICKSILVER MINING COMPANY, RESPONDENT.

MINING — QUIETING TITLE — JURISDICTION OF STATE COURT — TIME OF COMMENCEMENT OF ACTION.—The jurisdiction of the state court over an action to quiet title to a mining claim, although brought by one who was a contestant in the United States land-office, is not based upon section 2326 of the Revised Statutes of the United States. The jurisdiction and procedure governing such action depend entirely upon the constitution and laws of the state, and it is immaterial whether the judgment therein can be made available in the land-office or not. Consequently, it is not essential to the rights of the plaintiff that such action should be commenced within thirty days from the time he filed his claim in the land-office.

ID.—JUDICIAL NOTICE.—The court takes judicial notice of the date of the commencement of an action, and such dates, if material, need not be either averred or proved.

ID.— ANNUAL WORK — MINE REMAINING IDLE — WATCHMAN. — Where a mine is idle, the services of a watchman in looking after the property and taking care of the same may constitute work upon the claim sufficient to hold it, if such care was necessary to preserve tunnels, buildings, or any structures erected to work the mine. But if there was only the naked claim to be looked after, and a watchman was placed there merely to warn prospectors, and thus prevent a relocation, it would not be labor upon the mine in the sense of the statute.

ID.—NONCONTIGUOUS CLAIMS.—The fact that several mining locations are not contiguous would not necessarily prevent the annual work done on one location from inuring to the benefit of the others.

ID.—LOCATION—CITIZENSHIP—PLEADING—EVIDENCE.—In such an action, where the plaintiff claims as a grantee of a prior locator, it is not necessary for him to allege in his complaint that his grantor, at the time of the location, was a citizen of the United States, or had declared his intention to become such. Proof of such facts, while essential to the plaintiff's rights, are admissible under the general allegation of title.

ID.—ADVERSE POSSESSION OF CLAIM.—Under section 2332 of the Revised Statutes of the United States, the holding and working of a mining claim for five years, before any adverse claim is made thereto, is equivalent to a valid location, and confers the right of possession.

ID. —VERDICT. —In an action in the state court to quiet title to a mining claim, a general verdict finding for the plaintiff is sufficient in form.

APPEAL from an order of the Superior Court of Trinity County granting a new trial.   T. E. JONES, Judge.

This action was brought on the 16th of August, 1892, to quiet title to a certain mining claim.   On the 12th

of May, 1892, the defendant had filed its application for a patent to the claim in the United States land-office, and on the 18th of July, 1892, the plaintiff had filed its adverse claim in such land-office. On the trial, the jury rendered the following verdict: "We, the jury, impaneled to try this cause, find for the plaintiff." The defendant moved for a new trial, which was granted. The further facts are stated in the opinion of the court.

*Cross, Hall, Ford & Kelly,* and *T. W. H. Shanahan,* for Appellant.

*Reddy, Campbell & Metson,* and *D. G. Reid,* for Respondent.

TEMPLE, J.—This is an action to quiet title to certain mining ground in the county of Trinity, in which the court and the parties have encountered many difficulties, because, misled by the case of *Anthony* v. *Jillson,* 83 Cal. 296, they have persisted in treating it as a contest in the United States land-office for the right to enter certain mineral lands. In the case referred to, counsel and the court so speak of the controversy, but no question in relation to the character of the proceeding was before the court. Congress could not impose upon the state courts the duty or the labor of determining for the land-office who is entitled to purchase from the United States, and it has not attempted to do so. Nothing is referred to the state courts for trial. But the contestant is required to test his right to the possession of the mining ground in the local courts. This he must do—if in a state court—by some proceeding authorized by the laws of the state. If we could suppose that there was no mode provided in the state laws for doing this—no action of which the state courts would have jurisdiction in which this could be done— the act of Congress would not confer the jurisdiction which was lacking. This is not an action brought under section 2326 of the Revised Statutes of the United States to determine which of the parties is best

entitled to purchase from the United States, but only an ordinary action to quiet title. The proceedings in the land-office of the United States are utterly immaterial here, unless they tend to show title or right of possession in one of the parties.

Unless, therefore, defendant was prepared to maintain the proposition that if plaintiff did not commence his suit within thirty days from the time he filed his claim in the land-office, he not only lost his claim to a patent, but also his right of possession, it mattered not whether the suit was commenced within thirty days. This—if the position be correct—would constitute a forfeiture, and the defendant would be required to plead and prove it as a defense.

Under the state laws either party may bring an action to determine an adverse claim, but the jurisdiction and the procedure governing the action depends entirely upon our state constitution and laws. This action seems well adapted to the object sought to be accomplished by the congressional law, for in it the rights of the parties are wholly determined by the acts of Congress, and involve the same questions, as to the relative rights of the parties, which the officers of the land-office would otherwise have been required to pass upon. But it does not matter to the state court whether its judgment can be made available in the land-office or not. This view was taken by this court in *Quigley* v. *Gillett*, 101 Cal. 462, where it was said: "The action was brought 'to determine the question of the right of possession' of certain mining land, and that was the only question involved. The court had nothing to do with the proceedings in the land-office, and no power to determine as to their regularity or irregularity, sufficiency or insufficiency."

To the same effect is *420 Min. Co.* v. *Bullion Min. Co.*, 9 Nev. 240; 3 Saw. 634. It was there held that the act of Congress simply required the contestant to bring such action as was authorized by the laws of the state to determine the right of possession, and that such ac-

tion, when brought, would be governed and determined by the practice and rules of pleading there prevailing, irrespective of the act of Congress requiring the suit to be brought.

The rights of the parties will be entirely determined by the laws of the United States granting the right to enter upon the mineral lands, and to extract metals therefrom and to acquire title thereto, but the suit must be tried in every respect as though no contest was pending in the land-office of the United States in regard to the right to purchase the same. The court would be at liberty to order a special verdict if that was desired by the parties, because it would be more serviceable in the contest, for that may be done in any case, and such contingency is provided for in our practice.

If these views be correct, it was, of course, error to instruct the jury to find against plaintiff on the ground that it did not appear that the suit was begun within thirty days after plaintiff filed its claim in the land-office. For another reason I think it was error. The time of the filing of plaintiff's adverse claim in the land-office at Redding was averred and admitted. The court knew, judicially, when the action was commenced, and, therefore, that the suit was commenced within thirty days. It is not necessary either to aver or prove facts which are within the judicial knowledge of the court.

The instruction was a simple direction to the jury to find a verdict against the plaintiff. With the reason given for so instructing the jury had nothing to do. This direction the jury disobeyed.

Why the court proceeded to give other instructions, elaborately considering the law applicable to the facts of the case, after this explicit direction, it is impossible to conceive. It was confusing to the jury, for if they were to obey the explicit direction, they had nothing to do with the other instructions—at least so far as plaintiff's case is concerned. Furthermore, the court by subsequent instructions expressly submitted to the jury the whole case, including plaintiff's claim, and even wrote

out and handed to them the form of the verdict which they should render if they found for the plaintiff. In various instructions it submitted to the jury the question as to whether plaintiff, or its grantors, had complied with the law in regard to the location and working the mine, and as to its claim of right by actual adverse possession. The jury found for the plaintiff. In so doing they disobeyed the express direction to find against the plaintiff, but they obeyed the other direction to consider and pass upon the rights of the plaintiff, and to find according to the facts and principles of law declared by the court. The judge, in considering the case on motion for a new trial, was convinced that he had erred in directing the jury to find against the plaintiff, but thought, nevertheless, he was bound to grant a new trial on the authority of *Emerson* v. *Santa Clara County*, 40 Cal. 543, in which it was held that a verdict against the instruction of the court is a verdict against law. This case is not within the reason of that case. Here the instructions were in effect contradictory, and the verdict, while opposed to one instruction, is warranted by others.

But, as the order granting a new trial must be affirmed for other reasons, this point need not be further discussed. This plaintiff relied in part upon a location of the land in controversy by one John A. Lytle. To show that Lytle was a competent person under the laws of the United States to make such location, it was incumbent upon plaintiff to show that Lytle was a citizen of the United States, or had filed his statement declaring his intention to become such. The plaintiff put in competent and sufficient evidence to show that Lytle was a natural born citizen of the United States, but it was then stricken out on motion of defendant on the ground that it had not been pleaded. This ruling was very far reaching. By section 2319 mineral lands of the United States are open for exploration, occupation, and location to citizens and those who have declared their intention to become such, only. Under this rul-

ing plaintiff could derive no title through the location or occupation of Lytle because this fact was not averred. I do not think in an action to quiet title a plaintiff is bound to show the source of his title in his complaint, but to prove his right under that location it was incumbent upon plaintiff to prove that Lytle was competent under the laws of the United States to take, hold, and locate mineral land.

The court instructed the jury to the effect that one who has not located mineral land in the mode prescribed by law, and the custom of miners, may yet acquire a right thereto by holding and working the same for five years "in the absence of an adverse claim." Defendant's counsel contend that section 2332—the section referred to—only provides that a patent shall issue in such case when there is no adverse claim, but where any one has located the same land according to law and the custom of miners, then mere possession gives no right whatever.

The act of Congress has been otherwise construed in various cases. (*420 Min. Co.* v. *Bullion Min. Co., supra.*) Judge Sawyer says that the laws of the state constitute a part of the laws by which a mining right is determined. It must, therefore, follow that where such possession has continued for five years before the adverse right exists, it is equivalent to a location under the laws of Congress. (See, also, *Harris* v. *Equator Min. etc. Co.*, 8 Fed. Rep. 863; *Belk* v. *Meagher*, 104 U. S. 279; *Anthony* v. *Jillson, supra.*)

But while the instructions upon that subject state the law correctly, nevertheless I think the order must be affirmed. As already stated, the plaintiff also relied upon the location made by Lytle, and much testimony was taken upon that subject, and, at the request of plaintiff, the jury were told that if they found that plaintiff and its grantors had held the claim for eighteen years, basing their right upon the location made by Lytle, then every reasonable presumption should be indulged in favor of the validity of such alleged location.

In connection with this they were also told of the two modes provided by Congress for acquiring title to mineral lands. This was in effect telling them that if Lytle made the location, it could be relied upon by plaintiff as a source of title. But they were not only told in another instruction that they must find against plaintiff, but the court had stricken out all evidence of the citizenship of Lytle. Therefore, as the case then stood, there was no proof of a valid location made by Lytle. We cannot say that the jury did not base their verdict upon such alleged location, or that they found that plaintiff had held, worked, and possessed the claim for five years. We cannot say, therefore, that the instruction was not injurious.

The defendant also complains of the instruction of the court in regard to the work required upon a mine in order to hold the same. The jury were told that it might consist in digging, etc., " or, if the mine be idle, it may consist of the services of a watchman or custodian in looking after the property and taking care of the same."

To constitute a general rule this would require some qualification. If this sort of care was necessary to preserve tunnels, buildings, or any structures erected to work the mine, and which would be necessary in case work were resumed, I see no reason why it would not constitute work upon the mine as much as the erection of such structures in the first instance would. But if there was only the naked claim to be looked after, and a watchman were placed there merely to warn prospectors, and thus prevent a relocation, it would not be labor upon the mine in the sense of the statute. As applied to the facts of this case. the instruction was not injurious, for it was not disputed that there were reduction works, houses, and barns, as well as tunnels and pits to be looked after.

The buildings were upon the claim in dispute, but plaintiff claims two other locations which are not involved in this controversy. Most, if not all, the earth

works from which ore was extracted were on the other two claims. Defendant contends that the work was not for the purpose of working the claim in controversy, nor adapted to that purpose. This raised a question of fact to be determined by the jury. The fact, however— if so it was—that the claims did not actually touch each other, and there was a narrow strip of land between the locations, would not determine the question. Mines may be conceived of as so situated that the same work may be, and appear to be, expended in opening or developing both mines, although they are not actually contiguous. On the other hand, not all expenditures made with a view to working a mine would be considered work expended upon a mine under this rule; for instance, work done at a distance from the mine in the construction of a mill.

The form of the verdict was sufficient. Whether it would answer the purpose of the parties in the land-office does not concern us. It complies with all the requirements of our laws and practice.

The order is affirmed.

McFarland, J., Henshaw, J., Harrison, J., Van Fleet, J., and Beatty, C. J., concurred.