28  362
28  457
28  362
32   98
28  362
33  148
33  216

# APRIL TERM, 1901.

[No. 4047.]

## CLEARY v. SKIFFICH ET AL.

1. MINES AND MINING—ADVERSE SUITS—LIMITATION.

Section 2332 U. S. Rev. Stats. providing that where persons have held and worked mining claims for a period equal to the time prescribed by the statute of limitations for mining claims of the state or territory where the same may be situated, evidence of such possession and working shall be sufficient to establish a right to a patent, in the absence of any adverse claim, was intended to make evidence of such possession and working *prima facie* sufficient before the land department to secure patent, but the provisions of said section are not available as a denfense to an adverse suit by a claimant of a conflicting location, except it might be in such actions that proof of such possession would be sufficient upon which to presume that all steps necessary to effect a location had been taken.

2. MINES AND MINING—TRESPASS.

Where a lode claim was discovered without the lines of a mill site, but its boundaries as fixed embraced a portion of the mill site claim, the action of the lode claimants in projecting the boundaries of their claim so as to include part of the mill site was not a trespass so as to come within the rule that title to a mining claim cannot be initiated by a trespass.

3. MINES AND MINING—MILL SITES.

A mill site cannnot be located and patented upon mineral land containing valuable mineral, whether such mill site be located and patented in connection with a lode claim or whether it be located by a person not owning a mine in connection therewith.

4. MINES ANE MINING—MILL SITES—ADVERSE SUIT—EVIDENCE.

To sustain an adverse suit against an applicant for patent to a mill site by a subsequent locator of a lode claim in conflict there-

with, on the ground that the land is mineral and not subject to location for mill site, the lode claimant must show that the land contains mineral in such quantity and quality as, under the conditions existing at the time the rights of the mill owner attached, could have been extracted at a fair mining profit.

5. MINES AND MINING—MILL SITES—DISTRICT RULES.

Where the rules adopted by a mining district and which were approved by the territorial legislature authorized the location of mill sites without regard to the character of the land on which such sites were located, such rules are inconsistent with the laws of the United States which provide that mill sites can only be located upon non-mineral lands, and so far as such inconsistency exists the rules and act of the territorial legislature must yield to the act of congress.

6. MINES AND MINING—ADVERSE SUITS—INSTRUCTIONS.

In an adverse suit by a lode claimant against an applicant for patent to a mill site where the answer put in issue all the acts necessary to constitute a valid location of the lode claim, and where there was no evidence offered by plaintiff to show that his location was upon unappropriated mineral lands, the court should have given an instruction requested by defendant to the effect that the location of a mining claim must be upon unappropriated public domain of the United States, and in the absence of evidence on that point the plaintiff could not recover.

7. WATER RIGHTS—APPURTENANCES.

A vested right to the use of water for milling purposes carries with it the appurtenant right of a right of way for a ditch through which to divert the water to the place of use, but it does not carry with it as an appurtenance a right to the land on which the mill is constructed.

*Appeal From the District Court of Gilpin County.*

The subject matter of controversy in this case is the area in conflict between the Zara lode mining claim and the Arrighi mill site. Application for patent having been made for the latter the owners of the lode claim filed an adverse, and in support thereof, commenced this action againt the applicant for patent on the mill site. The judgment below was in favor of the plaintiffs. The defendant appeals.

Mr. J. W. WOTEN, Mr. WILLARD TELLER and Messrs. MORRISON & DeSOTO for appellant.

Mr. J. McD. LIVESAY for appellees.

Mr. JUSTICE GABBERT delivered the opinion of the court.

One of the defenses interposed as a special plea to the effect that defendant and his grantors had held and occupied the mill site uninterruptedly down to the time of the location of the lode claim for a period equal to the statute of limitations of this state, which defense was based on the provisions of section 2332, of the Revised Statutes of the United States. which' is as follows: "Where such person or association, they and their grantors, have held and worked their claims for a period equal to the time prescribed by the statute of limitations for mining claims of the state or territory where the same may be situated, evidence of such possession and working of the claims for such period shall be sufficient to establish a right to a patent thereto under this chapter, in the absence of any adverse claim:

To this plea a demurrer was interposed and sustained. The object of this section was to permit a party applying for patent to make a *prima facie* case before the land office by proving that the claim upon which the application for patent was made had been in the possession of himself and grantors for a period equal to the statute of limitations of the jurisdiction in which the claim was situated, provided no adverse claim was interposed. In other words—proof of possession for the statutory period in the absence of any adverse claim was to be taken by the land department as equivalent to an establishment in detail of all the facts necessary to constitute a valid location. The statute, therefore, is not available in an action brought in support of an adverse against an application for patent, for its language necessarily implies that possession in the applicant for the statutory period is of no avail as against an adverse claim based upon a conflicting location—*McCowan v. McLay,* 40 Pac. Rep., 602—ex-

cept it might be in such action that proof of such possession would be sufficient upon which to presume that all steps necessary to effect a location of the claim adversed had been taken. *Harris v. Equator M. & S. Co.,* 12 Mining Reports, 178; 3 McCrary, 14; 8 Fed., 883.

This question, however, is not material. If it be necessary to plead the statute in question, in order to take advantage of its provisions, defendant was not prejudiced by the action of the court in sustaining the demurrer, for the reason that he established (by testimony which was undisputed) that all acts necessary to constitute a valid location of his mill site had been performed.

A plea of defendant was also interposed to the effect that the land described in the complaint was not, at the time it was located as a lode claim, subject to location, for the reason that it was then actually occupied for a mining purpose by the defendant. On motion of plaintiffs this plea was stricken out. It is urged by counsel for defendant that title to a mining claim cannot be initiated by a trespass. The lode claim was discovered without the lines of the mill site; its boundaries as fixed did embrace a portion of the latter. These facts appear from the pleadings. In such circumstances the act of the plaintiffs in projecting the boundaries of their claim so as to include a part of the mill site was not a trespass, and the motion to strike was well taken.

The mill site was located in 1860, and ever since that date, down to the time of the location of the lode claim, in 1895, was in the uninterrupted possession of the defendant and his grantors, who had erected a three stamp mill thereon, about the time of the location, which was subsequently enlarged and has been operated from the time of its construction. Over $16,000 has been expended by defendant and his grantors in the way of improvements. The jury found that the vein of the lode claim intersected the mill site. There is no question that a vein was dis-

covered on the lode claim upon which its location is based, and
that such vein carries mineral in appreciable quantities. The
vein in question appears to have been known about 1884, but
no ore has ever been shipped therefrom, nor has there ever been
any attempt to opperate it as a mine. Its values are shown by
assays only, which, with one exception, established that they are
merely nominal. The mill site is not located in connection with
any mining claim. The district rules in force in the Enterprise
Mining District, in which the property in controversy is situate,
passed in 1860-61, provided for the location of mill sites, and
that location for this purpose shall be valid as against all other
classes of claims. The mill site in question was located under
these rules, and in compliance with their provisions. The court
instructed the jury, in substance, that it is sufficient if the dis-
covery shaft discloses a vein or crevice such as a miner would be
willing to open or follow; that it made no difference what the
size or value of such vein might be; that non-mineral land only
can be taken for mill site purposes; and that in case of adverse
suit by a lode mining claim against a mill site, the latter must
give way to the former, provided it is shown that the vein cros-
ses or intersects the mill site, and it is further shown that the
lode claim is a valid, subsisting location. On behalf of the
defendant, the court was requested to direct the jury that a lode
claim, under the terms of the act of congress authorizing its
location, must be upon a valuable mineral deposit, which was
refused.

On this record counsel for defendant contend: (a) That a
mill site of the class under consideration need not necessarily be
located upon non-mineral ground; (b) that as against the mill
site, the ground in controversy could not be held as a mining
claim unless it appears that it contains mineral sufficient in
quantity and quality to justify extraction; (c) that under the
district rules of Enterprise Mining District, defendant has a
vested right to the mill site.

(*a*) For the location of mill sites, congress has provided that non-mineral ground, not contiguous to a lode claim, and used or occupied by the owner of such claim for mining or milling purposes, may be included in the application for patent to his lode claim, and patented in connection therewith; and also, that the owner of a quartz mill or reduction works not owning a mine in connection therewith, may obtain patent for his mill site— section 2337, Rev. Stats. U. S. Under this section it is contended that the latter class of mill sites may be patented on mineral land. This view is not tenable. The object of the law is to permit title to land to be acquired for mill sites located on mineral lands, which do not contain valuable mineral bearing veins, or mineral deposits. There is no reason for a distinction on account of the character of use, or the ownership or non-ownership of a mine in connection with a mill site. The land department has uniformly held that a mill site cannot lawfully be located on mineral land, containing valuable minerals, without any attempt to distinguish between the two classes—1 Lindley, sec. 520.

(*b*) The definition of a vein, as given by the trial court, is a general one frequently adopted in contests between conflicting lode claims. Like all general rules, it must be reasonably applied, for cases will arise, under peculiar facts, which create an exception. A mill site is a mining location; but the land which may be taken for that purpose is of a special character. The statute contemplates that title to lands for mill sites may be secured which are *prima facie* mineral, but which, in fact, are non-mineral; so the question presented is, what is the test by which to determine whether land so claimed is non-mineral or not, when a contest arises between a mill site location and a lode claim subsequently located. Where lands designated as mineral have been claimed and located as agricultural, it has been held that the mere presence of gold in placer deposits, or the existence of a vein within the limits of the land so claimed, would

not impress it with the character of mineral land. *U. S. v. Reed,* 28 Fed., 482; *Ah Yew v. Choate,* 24 Cal., 562; *Alford v: Barnum,* 45 Cal., 482; *Etling v. Potter,* 17 L. D., 424; *Cutting v. Reininghaus,* 7 L. D. 265; *Peirano v. Pendola,* 10 L. D., 536.

Contests have frequently arisen between placer and subsequent lode locations involving the question of whether or not the placer embraced within its limits "known lodes," which, under the provisions of section 2333 Rev. Stats. U. S., are excepted from placer patents. In such cases it has been held that a "known lode" is one known to exist at the time of application for patent, and to contain mineral in such quantity and quality as to justify expenditures for the purpose of extracting them. *Montana Central Ry. Co. v. Migeon,* 68 Fed., 811; *Iron Silver M. Co. v. Mike and Starr G. & S. M. Co.,* 143 U. S., 394; 12 Sup. Ct. Rep., 543; *Brownfield v. Bier,* 39 Pac. Rep., 461.

In many other cases the question as to what constitutes mineral lands as between the different classes of locations which may be made upon lands of that character, has been presented for determination, either before the courts or the land department, and as to grants previously made, the holding has uniformly been that it is not every crevice or out-cropping on the surface which suggests the possibility of mineral that can be adjudged a "known vein" or lode, within the meaning of the statute, but that in addition to this fact, it must appear that such lands embrace veins known at the time of the grant thereof to be sufficiently valuable for minerals to justify expenditures for their extraction. *Iron Silver, etc., Co. v. Mike and Starr, etc., Co.,* suppra; *Dower v. Richards,* 151 U. S., 658; 14 Sup. Ct. Rep., 452; *Davis v. Weibbold,* 139 U. S., 507; 11 Sup. Ct. Rep., 628; *Deffeback v. Hawke,* 115 U. S., 392.

These decisions are based upon the proposition that one claiming land as a mining location from which to extract minerals must establish, as against a prior location of another class, that the ground so claimed is valuable to operate as a mine, and un-

less this does appear as a fact, he will not be permitted to take it from another who has previously located it in good faith for a different purpose. It has also been held, when this question was presented, that it is one of fact, to be determined by the jury before the *nisi prius* court—*Iron Silver, etc., Co. v. Mike and Starr, etc., Co., suppra.* This necessarily follows in actions brought in support of an adverse claim against an application for patent in those cases where, by virtue of the provisions of sections 2325 and 2326 Rev. Stats. U. S., an adverse is the remedy instead of a protest, because the right of possession of the contesting parties turns upon the character of the land in controversy. The same principle and reasons which have been applied in determining the rights of rival claimants of land for agricultural or mining purposes, or as placer or lode claims, should control and determine the rights of contestants to the same premises when one claims as a mill site and the other as a subsequent lode location. It is a well known fact that lands designated "mineral" contain precious metals in small quantities, but not sufficient to justify the expense of attempting to extract them. It is not to such lands that the term " mineral," in the sense of the statute relating to mill sites, is applicable—*Davis v. Weibbold, supra.* Works for the reduction of ores are necessary; they must be located in the near vicinity of mines. Land for such purposes may be utilized, provided it is non-mineral. When that question is raised by those locating a lode claim embracing land already taken as a mill site, and upon which many thousands of dollars have been expended in the erection of mills, and which the claimant has taken up in good faith, the test must be, does such land contain minerals of a quantity and quality which can be extracted at a profit? 1 Lindley, sec., 98. If not, they are valueless for the extraction of minerals, and therefore non-mineral in their character, when previously claimed as a mill site. In such circumstances, that they are mineral

must be established as a fact, and not as a theory—*Dughi v Harkins,* 2 L. D., 721. To permit a claimant, under the guise of locating a lode claim, to take from another land already utilized for mill site purposes which contains no minerals of sufficient value to justify extraction, and which would give to the lode claimant that which is of no value to him, except as he may convert it into a means to extort from the mill site owner the payment of money to prevent the loss of improvements erected in good faith, would certainly be inequitable and unjust. The clear intent of congress was to permit the acquisition of title to land for mill site purposes which was not valuable for mines, and the statute should be given this construction when it results in no loss to a subsequent *bona fide* lode claimant. Any narrower construction would result in rendering titles to mill sites previous to patent insecure, and the expenditure of money thereon in the erection of reduction works hazardous in the extreme, and at the same time reserve from use for mill site purposes land which was of no practical value for any other.

In the circumstances of this case there is also presented for determination this further proposition, namely: As of what date must the mineral character of the mill site be ascertained? When the validity of a grant depends upon certain conditions, it is the rule that such conditions are those existing as of the date the grant took effect. *Davis v. Weibbold, supra; Mon Central Ry. Co. v. Migeon, supra; U. S. v. Reed, supra; Brownfield v. Bier, supra.*

Under the rules of the land department, where the application is for patent for a mill site only, as in this instance, there must be a mill or reduction works on such premises. Le Neve Mill Site, 9 L. D., 460; 1 Lindley, sec., 524. A mill site claimant would certainly have a reasonable time after taking the necessary steps to legally locate his claim, within which to commence the erection of reduction works thereon. If not commenced within a reasonable time, then his rights would attach

as against other claimants from the time he did begin construction of such works in good faith and prosecuted them with reasonable diligence. Having vested and continued, the character of the land must be determined of the date his rights attached. The fact that such lands might contain mineral deposits which at a later date, by reason of changed conditions, could be mined at a profit, would not affect his rights. (See authorities last above cited). The rights of the parties were, therefore, dependent upon the questions of fact presented by this proposition. Unless the premises in dispute did, in fact, contain mineral deposits of a value and quantity which, under the conditions existing at the time when the rights of the original owners of the mill site premises attached, could have been extracted at a fair mining profit, they were non-mineral in character, and the jury should have been instructed accordingly. 1 Lindley, Secs. 94-98.

(c) The district rules of Enterprise Mining District, passed in 1860-61, provided for the location of mill sites without respect to the character of the land upon which they might be located. The territorial legislature, in 1868, declared that all rights to any portion of the public domain acquired prior to the seventh day of November, 1861, should be determined by the local law of the district in which such tract was situate, as it existed on the day such rights were acquired, or as thereafter may have existed—Sec. 3609 Mills Ann. Stats. When congress passed the present law relating to mining claims, all rights to such lands were recognized to the extent that they had attached or been acquired under local rules or customs not inconsistant with the laws of the United States—Sec.2319 Rev. Stats. U. S. The same act, as already noticed, provided that mill sites could only be legally located upon non-mineral lands—Sec. 2337 Rev. Stats. U. S.— hence, the rules of the district relating to the location of mill sites and the acts of the territorial legislature must yield to the act of congress, in so far as they relate to the location of such sites upon mineral lands, for in this particular, they were incon-

sistent with the congressional act.

By supplemental brief filed on the part of appellant, two further propositions are advanced: (1) That the court erred in refusing to instruct the jury to the effect that the location of a mining claim must be upon the unappropriated public domain of the United States, and that plaintiffs having failed to offer any evidence on that point, they are not entitled to a verdict. (2) The court erred in refusing to instruct the jury that if it appeared from the evidence that defendant and his grantors were in the actual possession of the mill site at the time of the location of the Zara lode, claiming to own the same, and operating the mill by using water from the creek through a ditch across the mill site that such use and occupation would give defendant the better right to the premises in dispute.

All the acts necessary to constitute a valid location of the lode claim were put in issue by the answer. The court instructed the jury, in substance, that a location of a mining claim must be made upon unoccupied public domain, but as there was no testimony offered on the part of plaintiffs to prove that their location was upon unappropriated mineral lands, the court should have given the instruction requested by defendant, and advised the jury that in the absence of evidence on this point, the plaintiff could not recover.

The next proposition is based upon the theory that as defendant had established a vested right to the use of water flowing in the creek upon which his mill site is situate, and across which a ditch is constructed for the purpose of utilizing such water, he was entitled to hold the ground in controversy, for the reason that the grant of the water carried with it all incidentals necessary to its complete enjoyment, and therefore, the land upon which the mill was situate, it being the means through which such water is beneficially used.

In support of this proposition, sections 2339 and 2340 Rev. Stats. U. S. are relied upon, which provide, in substance, that

whenever rights to the use of water for mining purposes have vested, and are recognized by the local customs, laws and decisions of the courts, the owners of such rights shall be protected in the same, and the right of way for the construction of ditches' for the purpose of utilizing such water, is confirmed. All patents shall be subject to vested water rights or ditches used in connection therewith.

The theory of counsel for defendant is, that privileges and appurtenances properly belonging to the thing granted pass with it, and therefore, the right to the use of water being established sufficient land passed with that right upon which to beneficially apply the water so appropriated. It is true that the grant of a particular piece of property, in the absence of any limitation, carries with it those appurtenances necessary to the beneficial enjoyment of the property granted, which it is within the power of the grantor to convey. An appurtenance is that which belongs to something else as an adjunct or appendage of such moment that the thing to which it attaches cannot be enjoyed without its use. It is therefore limited to that which is *necessary* to the enjoyment of the principle thing granted. *Nichols v. Luce,* 24 Pick., 102. The appurtenance which could pass by virtue of the grant to a right to the use of water would be that necessary to its utilization, so that it could be applied to the purpose for which it was appropriated. The right might become appurtenant to that in connection with which it was beneficially used, but the latter could not be appurtenant to such right. It might as well be argued that because a vested right to the use of water had been acquired for irrigation purposes, that there attached to such right as an appurtenance, land upon which to apply the water, as to say, as in this instance, there passed with the water right land in connection with which such water was utilized. The appurtenance attached to the water right of defendant is the right of way for the ditch through which the water is diverted. That is not in controversy. The laws of the United States protect this

right. If plaintiffs should obtain a patent to the lode claim, it would be subject to such right.

The judgement of the district court is reversed and the cause remanded for a new trial, in harmony with the views herein expressed.

*Reversed and Remanded.*