[Civ. No. 8768. First Appellate District, Division One.—January 24, 1933.]

EDWARD DALTON· et al., Respondents, v. CHARLES· R. CLARK et al., Appellants.

A. H. Ricketts, W. H. Metson and F. J. Feeney for Appellants.

Griffith & Thornburgh and Wm. G. Griffith for Respondents.

JAMISON, J., *pro tem.*—This is an action for the possession of a certain tract of land consisting of five acres to which plaintiffs claim to be entitled for a mill site for the reduction of quicksilver ore from a near-by cinnabar mine owned by them.

The amended complaint contains two counts, in the first of which it is alleged that plaintiffs are the owners of said five-acre tract and entitled to the possession thereof, and that defendants claim and assert some interest therein but that said claim is without right. They allege in the second count that they are the owners in fee of said five acres by virtue of a location notice filed in accordance with the laws of the United States on January 16, 1915, by respondents' predecessors in interest, and relocated as a mill site on October 27, 1924, by respondent Edward Dalton and his grantors; that ever since January 16, 1915, plaintiffs and their predecessors in interest have in good faith used and occupied the said tract as a mill site, until November, 1929, when the defendants wrongfully entered upon said mill site and took possession of same, and ever since said last-named date have continued in possession of same against the will, without the consent of plaintiffs and against their protest; that defendants have no right, title or interest in said mill site, or any right to the possession thereof; that plaintiffs have demanded from defendants the possession of said mill site but defendants have refused and still refuse to deliver possession of the same to plaintiffs, and that by such dispossession plaintiffs have been damaged in the sum of $30,000. Defendants answered, denying the allegations of the complaint. Plaintiffs had judgment decreeing them to be the owners of said five-acre mill site subject to the paramount title of the government thereto, and adjudging them entitled to the possession of said five-acre tract. From the judgment defendants appeal.

It appears from the evidence produced by respondents that on April 3, 1905, one Weldon was issued a patent from the government for three quicksilver mines known as the "Red Rock Consolidated Mine". In 1904, one Reddington leased this mine and worked it until 1907, and in connection therewith he built the necessary camp buildings, cabins, stables and retorts to be used in the reduction of ores produced from said mine, these structures being placed upon the five-acre tract now in controversy. In 1907 Reddington surrendered his lease and turned over to his lessor the possession of said mine, together with the structures he had erected on the said five-acre tract.

On January 20, 1916, respondent Dalton, together with Wood and Vincent acquired the interest of Weldon in said mine and appurtenances. There is some evidence that at this time Wood placed monuments marking the boundaries of said mill site and filed and recorded a notice of the location of said five-acre tract for a mill site. Appellants objected to the receipt in evidence of the said mill site location notice, apparently upon the ground that it did not comply with the regulations governing the location of mill sites. The objection was by the court sustained.

From 1915 to 1921 Dalton and Wood worked the said mine, taking the ore mined therefrom to the retorts on the mill site and there reducing same, and during this period of over five years resided on the mill site tract.

In 1921, owing to the low price of quicksilver, they ceased working the said mine, but left their mining tools and equipment on the mill site, closing the doors of the buildings thereon and placing a sign, with their names on it, requesting that all doors be kept closed. Thereafter, from 1921 to 1923, Wood continued to visit the mine and mill site, remaining there from a few days to a week on each occasion.

Wood died in 1923 and his son continued to visit and look after the mining property until 1925. Respondent Fox acquired Wood's interest in the mine in 1925, and that of Vincent in 1927. From 1925 until November, 1929, Dalton made trips each year to the mine and mill site, looking after said property and staying at the mill site from one day to some weeks, and during all this time he

found no one in possession of the property, and said sign placed on said property continued to remain there.

Appellant owned a mining claim adjoining the said mill site. He was given permission by Dalton to occupy one of the cabins on the mill site while doing his annual assessment work on his said claim. It appears that appellant Charles R. Clark had in July, 1924, filed a lode-mining location notice which included the said five-acre tract upon which said mill site was located, and that in November, 1929, he took possession of the buildings and property on said mill site and ousted respondents therefrom.

Appellants contend that this is an action to quiet title and that it is well settled that in this kind of an action respondents must rely upon and must show title in themselves in order to recover, and that they have failed to do so, citing numerous authorities.

█ The trial court in its findings and judgment acted upon the theory that this was an action to quiet title. Assuming this is an action to quiet title, it is a well-established principle that the plaintiff must show title in himself, and cannot rely upon lack of title in his adversary. █ But it is also well settled that, although the title in fee to mineral lands is vested in the United States, yet as between the claimants of said lands, all rights, interests and estates in the mines are treated as being an estate in fee, vesting in such claimants a right of property therein, founded upon their possession or appropriation of the land containing the mine, and they are treated as between themselves and all persons but the United States as the owners of the land and mines thereon. (*Buchner* v. *Malloy,* 155 Cal. 253 [100 Pac. 687]; *Belk* v. *Meagher,* 104 U. S. 279 [26 L. Ed. 735]; *Forbes* v. *Gracey,* 94 U. S. 762 [24 L. Ed. 313]; *Gwillim* v. *Donnellam,* 115 U. S. 45 [5 Sup. Ct. Rep. 1110, 29 L. Ed. 348]; *Merritt* v. *Judd,* 14 Cal. 59; *Hughes* v. *Devlin,* 23 Cal. 502; *Spencer* v. *Winselman,* 42 Cal. 479.)

Respondents claim title to the five-acre mill site by possession, under the provisions of section 2332 of the Revised Statutes of the United States, which provides: "Where such person or association, they and their grantors, have held and worked their claims for a period equal to the time prescribed by the statute of limitations for mining claims of the State or Territory where the same may be situated, evi-

dence of such possession and working of the claims for such period shall be sufficient to establish a right to a patent thereto under this chapter, in the absence of any adverse claim.''

In *Altoona Q. M. Co.* v. *Integral Q. M. Co.*, 114 Cal. 100 [45 Pac. 1047], it was held that under said section 2332, when possession has continued for five years, before adverse rights exist, it is equivalent to location. (*Humphreys* v. *Idaho Gold Mines etc. Co.*, 21 Idaho, 126 [120 Pac. 823, 40 L. R. A. (N. S.) 817]; *Upton* v. *Santa Rita Min. Co.*, 14 N. M. 96 [89 Pac. 275].)

 A mill site is a mining location. (*Cleary* v. *Skiffich*, 28 Colo. 362 [65 Pac. 59, 89 Am. St. Rep. 207].) No annual expenditure or assessment work is required upon a mill site. (Ricketts' American Mining Law, 3d ed., 454.) It is sufficient if the work or improvement indicates a present and continuous use, such as placing monuments to mark the boundaries, erecting buildings, appliances for milling ore, etc. (1 Snyder on Mines, secs. 324, 326; *Valcalda* v. *Silver Peak Mines*, 86 Fed. 90.)

In the case at bar the evidence is undisputed that Dalton and Wood resided on the mill site for a period of more than five years, from 1915 to 1921, under a claim of title to it, and thereafter Dalton and the grantors of Fox and Fox continued in such possession until ousted by appellants in 1929.

 Appellants' claim to the ownership of the mill site is based upon their location of same as a lode mining claim in July, 1924. To constitute a valid location of a lode of quartz, a discovery of a vein or lode of quartz is necessary. (Civ. Code, sec. 1426; 2 Lindley on Mines, 2d ed., sec. 335; *McElligott* v. *Krogh*, 151 Cal. 126 [90 Pac. 823]; *Brown* v. *Luddy*, 121 Cal. App. 494 [9 Pac. (2d) 326].)

Snyder in his work on Mines, volume 1, section 344, defines the word ''discovery'' as follows: ''. . . the actual finding of mineral-bearing rock in place, . . . the discovery of mineral-bearing ore within the crevices of the rock, or incased within defined boundaries, or such indications of the presence of ore within rock in place, . . . as an experienced miner would feel justified in spending his time

and money upon with the reasonable expectation of finding ore in paying quantities.''

In *United States* v. *Iron Silver Min. Co.*, 128 U. S. 673, 683 [9 Sup. Ct. Rep. 195, 199, 32 L. Ed. 571], the court said: ''It is not enough that there may have been some indications by out-croppings on the surface, of the existence of lodes or veins of rock in place bearing gold or silver or other metal, to justify their designation as 'known' veins or lodes. To meet that designation the lodes or veins must be clearly ascertained, and be of such extent as to render the land more valuable on that account, and justify its exploitation.''

Respondents produced substantial evidence that when appellants made their location in July, 1924, they had made no discovery of a lode or vein of quartz as a basis for that location; that no mineral or mineral bearing rock existed on said mill site. By the finding of the trial court, that respondents were the owners of the five-acre mill site, it necessarily found that the said location of appellants was on nonmineral land.

Appellants maintain that section 2332 of the Revised Statutes of the United States does not support respondents' claim that they have acquired title to said mill site by five years' occupation of it, for the reason that there is no evidence that they have paid all taxes levied or assessed against the property, or that none were assessed against it. We do not so construe said section 2332. It does not require that respondents should do all things necessary to acquire a prescriptive right to the mining claim under the laws of the state where the mine is located, but only that the claimant has held and worked (where work is required) for a period equal to the time prescribed by the statute of limitations for mining claims of the state wherein the mine is located.

The act of Congress of 1850, 9 United States Statutes, page 452, expressly prohibits this state from interfering with the primary disposal of the public lands, or passing laws whereby the right of the United States to dispose of same shall be impaired or questioned. Therefore, if the United States sees fit to vest an interest in the public lands in a claimant who occupies the claim for a period

of five years, the state cannot nullify that interest by requiring that the claimant shall perform additional act or acts.

In *Cleary* v. *Skiffich, supra,* at page 369, it is said: "Works for the reduction of ores are necessary; they must be located in the near vicinity of the mines. Land for such purposes may be utilized, provided it is nonmineral. When that question is raised by those locating a lode claim embracing land already taken as a mill site, and upon which many thousands of dollars have been expended in the erection of mills, and which the claimant has taken up in good faith, the test must be, does such land contain minerals of a quantity and quality which can be extracted at a profit? (1 Lindley on Mines, sec. 98.) If not, they are valueless for the extraction of minerals, and therefore non-mineral in their character, when previously claimed as a mill site. . . . To permit a claimant, under the guise of locating a lode claim, to take from another land already utilized for mill site purposes which contains no minerals of sufficient value to justify extraction, and which would give to the lode claimant that which is of no value to him, except as he may convert it into a means to extort from the mill site owner the payment of money to prevent the loss of improvements erected in good faith, would certainly be inequitable and unjust.''

We are of the opinion that respondents were the owners of land in possession of the five-acre mill site at the date of appellants' attempted location of it as a lode claim; that the said lode claim is invalid for the reason that said mill site is nonmineral land; that appellants are therefore trespassers upon said property; that under section 2332 of the Revised Statutes of the United States respondents, by their occupancy of the mill site, under the circumstances shown, for more than five years, acquired the same title to the mill site that they would have acquired by a formal and regular location of same, and that the interest thus acquired vested title to said mill site in them, subject to the paramount title of the government.

The judgment is affirmed.

Knight, Acting P. J., and Cashin, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on February 23, 1933.