[Civ. No. 2186.   Fourth Appellate District.—March 21, 1939.]

H. B. LIND, Appellant, v. ANNIE M. BAKER et al., Respondents.

LeRoy N. French, Chas. L. Nichols, Gerald F. H. Delamer and Raymond E. Hodge for Appellant.

Z. B. West and Harry H. Parsons for Respondents.

MARKS, J.—This is an appeal from a judgment denying plaintiff title to six unpatented mining claims in the Vanderbilt mining district in San Bernardino County, and awarding to defendant C. C. Darling, subject to the paramount title of the United States, four unpatented mining claims in that district; to Annie M. Baker, Bayard T. Baker, Verne A. Baker and Elizabeth Henderson Baker (hereinafter referred to as the Baker Group), subject to the paramount title of the United States, four unpatented mining claims in that district. The Baker Group claims were made subject to the contractual rights of Fred Sifford, W. L. March and H. C. Ferris. The judgment also enjoined plaintiff from interfering with the mineral rights of all these defendants. The rights of the other defendants claiming interests in the mineral locations, or the profits therefrom, through the estates of C. A. Bell, deceased, and Sarah J. Bell, deceased, are not involved in this appeal. By stipulation those rights, if any,

were reserved for trial and determination after the judgment on the controversy between plaintiff and C. C. Darling, and the Baker Group and those claiming under them, becomes final.

The interests of C. C. Darling and the Baker Group are separate and distinct. As between them, it is believed their mining claims do not overlap. It is probably true that if they ' do overlap the Darling title is superior and paramount to that of the Baker Group. In the findings of fact the rights of these defendants are treated separately. Except on certain questions, we find it convenient to consider their cases separately.

### The C. C. Darling Claims

C. C. Darling owned about seventy mining locations in the Vanderbilt mining district. Four are involved here, the New Midnight, Gold Bronze No. 4, Rainbow Side, and Midway. He acquired title to them prior to 1922, either by his own location or from prior locators. He continued in the sole, uninterrupted and exclusive possession of them except for the attempted interference by plaintiff in his locations of the Yucca and (perhaps) the Opportunity Quartz Mining Claims. The Yucca was located by plaintiff on October 10 and the Opportunity on October 7–10, 1930. Plaintiff did not go into actual possession of any portion of either of these claims which overlapped any of the Darling claims, and Darling's actual possession was never disturbed except as it might have been affected by the filing of plaintiff's location notices. Plaintiff contends that his Opportunity location did not overlap any of Darling's claims. This is probably correct and we will so assume.

Darling testified that he had a mill, a dwelling, other structures, and about seven hundred feet of underground workings besides various shafts and cuts on his seventy claims. He testified that he had expended $100,000 in the development of and in mining these claims; that at least $10,000 had been spent on the New Midnight Claim. The three other claims in question here are in a group with the New Midnight Claim. Darling found valuable ore and had mined and removed it.

Plaintiff admits that Darling had done all necessary assessment work on his property. He attacks Darling's own-

ership of the claims on the sole ground that his location notices were defective because, as he maintains, none of them contained "such a description of the claim by reference to some natural object, or permanent monument, as will identify the claim located". (Subd. 5, sec. 1426, Civ. Code.) We will assume, without holding, that this contention is correct.

Section 38, chapter 2, title 30, U. S. C. A. (sec. 2332, U. S. R. S.) provides as follows:

"Where such person or association, they and their grantors, have held and worked their claims for a period equal to the time prescribed by the statute of limitations for mining claims of the State or Territory where the same may be situated, evidence of such possession and working of the claims for such period shall be sufficient to establish a right to a patent thereto under this chapter, in the absence of any adverse claim; but nothing in this chapter shall be deemed to impair any lien which may have attached in any way whatever to any mining claim or property thereto attached prior to the issuance of a patent."

On this question of possession the trial court found as follows:

"That it is not true that the plaintiff, H. B. Lind, was at any time, and especially on July 1st, 1931, a locator or appropriator of said 'Yucca' lode claim, or the area or ground covered thereby or included therein, peaceably and in good faith, but on the contrary the Court does find: (a) that said attempted location of the 'Yucca' claim was initiated by force, menace and fraud, as against the said defendant C. C. Darling, as the possessor in actual possession thereof as claimant thereto, and (b) the Court doth further find that said defendant Darling had been in the open, adverse, continuous, uninterrupted, undisputed and actual possession thereof as owner (save as against the paramount title of the United States Government) for more than ten (10) whole consecutive years immediately prior to July 1st, 1931; and the Court doth further find that the plaintiff H. B. Lind, long prior to and especially at the time of his said attempted location on July 1, 1931, knew that (1) said C. C. Darling was in the actual and undisputed possession of said lands and area and (2) the plaintiff, H. B. Lind, actually knew the monuments, boundaries and exterior limits of said quartz lode claims and

mineral lands of C. C. Darling; of the improvements and ground and underground workings thereon, that the said boundaries and exterior limits of said lode claims were so marked upon the ground that they were plainly visible and readily traced and followed, and that said lode claims were not, nor was any part thereof, during the year of 1931, subject and open to relocation or appropriation as public mineral lands, under said mineral land laws, or otherwise, by plaintiff.''

In addition to the evidence already outlined, Darling testified that he and his predecessors had been in possession of his four mining claims involved here for more than ten years prior to 1931; that the boundaries of the claims were plainly marked; that plaintiff did not trespass on any of those claims in setting any of the monuments of the claims he located.

In his testimony Darling used a map which was introduced in evidence for the purpose of explaining his testimony. This map shows numerous corner, end, and side line monuments plainly marking the boundaries of the claims in question.

The foregoing evidence brings Darling's claims within the rule announced in section 38, chapter 2 of title 30, U. S. C. A., which we have quoted.

This section has been frequently construed by the courts of the country. Without deviation, it has been interpreted as giving the claimant who, either through his predecessors in interest or personally, entered upon land that was open to location, built his monuments, made discovery of valuable minerals, completed his annual assessments and continued such possession for a period equal to the statute of limitations (five years here) the right to a patent from the United States regardless of defects in his location notices. (*Cole* v. *Ralph,* 252 U. S. 286 [40 Sup. Ct. 321, 64 L. Ed. 567]; *Springer* v. *Southern Pac. Co.,* 67 Utah, 590 [248 Pac. 819]; *Newport Min. Co.* v. *Bead Lake G. C. M. Co.,* 110 Wash. 120 [188 Pac. 27]; *Law* v. *Fowler,* 45 Idaho, 1 [261 Pac. 667]; *Oliver* v. *Burg,* 154 Or. 1 [58 Pac. (2d) 245].)

This rule is recognized and applied in California. See *Altoona Q. M. Co.* v. *Integral Q. M. Co.,* 114 Cal. 100 [45 Pac. 1047]; *Dalton* v. *Clark,* 129 Cal. App. 136 [18 Pac. (2d) 752]; *McLean* v. *Ladewig,* 2 Cal. App. (2d) 21 [37 Pac. (2d) 502]. In the last cited case the court said:

"The contention of plaintiff that title by adverse possession has been established is, in our opinion, sustained. The effect of section 2332, U. S. Revised Statutes, has been held to be a declaration that possession for the statutory period is the equivalent of a valid location. (*Altoona Q. M. Co.* v. *Integral Q. M. Co.*, 114 Cal. 100 [45 Pac. 1047]; 40 Cor. Jur. 779.)

"In *Humphreys* v. *Idaho Gold Mines Development Co.*, 21 Idaho, 126 [120 Pac. 823, 40 L..R. A. (N. S.), at page 826], it is said:

" 'It seems to us that the provisions of section 2332 of the Revised Statutes of the United States are intended to obviate the necessity for proof of posting and recording a notice of location in cases where the claimant to mineral ground has been in the actual, open, and exclusive possession of the ground for a period equal to that required by the local statute of limitations governing adverse possession of real estate.'

"It appears abundantly from the evidence here that the plaintiff and her predecessors in title have held and worked the 'Good Luck Mine' as described in the judgment for many years in excess of five years. The payment of taxes is not required to establish title by adverse possession. (*Dalton* v. *Clark*, 129 Cal. App. 136 [18 Pac. (2d) 752]), and the parties stipulated on the trial that all assessment work had been done.

"The evidence seems to us clear that the location in question was established upon a vein or lode of practical value. The witness John E. McLean testified that he had taken several thousand dollars in gold from the mine. The witness Marre described the course of the main vein in the lode. The law does not require that the vein contain ore in paying quantities. It is enough if ore is found and the indications are sufficient to warrant a prudent man in spending his labor and means, with reasonable prospect of success in developing a valuable mine. (*Garibaldi* v. *Grillo*, 17 Cal. App. 540 [120 Pac. 425]; see, also, *Springer* v. *Southern Pac. Co.*, 67 Utah, 590 [248 Pac. 819].)"

In *Belk* v. *Meagher*, 104 U. S. 279 [26 L. Ed. 735], it was said:

"A mining claim perfected under the law is property in the highest sense of that term, which may be bought, sold and

conveyed, and will pass by descent. (*Forbes* v. *Gracey,* 94 U. S. 762, 767 [24 L. Ed. 314].) . . .

"Mining claims are not open to relocation until the rights of a former locator have come to an end. A relocator seeks to avail himself of mineral in the public lands which another has discovered. This he cannot do until the discoverer has, in law, abandoned his claim and left the property open for another to take up."

■ The trial court found that much, if not all, of the land described in plaintiff's Yucca location conflicted with the mining claims of Darling; that this land was not then open for location and was in the lawful possession of Darling. It follows that as the land was not open for location, and as Darling owned the superior title, plaintiff acquired no rights by his Yucca location.

## The Baker Group Claims

A number of years prior to 1929, probably in 1921, or before, C. A. Bell, brother of Annie M. Baker, had located, either in his own name or in the names of himself and Sarah J. Bell, his wife, the four mining claims to which the Baker Group asserts title. On July 10 and 18, 1929, C. A. Bell, acting for A. M. Baker (Annie M. Baker), located the Paymaster, Gold Bullion, Coyote and Bager (Badger) Quartz Mining Claims. The location notices were signed by A. M. Baker. These were the same claims which had been located by C. A. Bell and Sarah J. Bell. There is no claim that they were not open for location in July, 1929.

■ After 12 o'clock noon on July 1, 1931, plaintiff located these mining claims in his own name as the Paymaster No. 1, Gold Bullion No. 1, Coyote No. 1, and Badger No. 1. He claims that the required assessment work had not been done by or for Mrs. Baker during the year prior to July 1, 1931. This is the sole ground upon which he attempts to support his claim to these four locations.

The trial judge found that the assessment work on the A. M. Baker (Baker Group) claims for the year ending June 30, 1931, had been done; that plaintiff 'acted fraudulently and with force in entering on the property on July 1, 1931, and in making his locations; that plaintiff's locations were void.

If there is evidence in the record supporting the finding that the Baker assessment work had been done we need not consider any of the other numerous questions argued by counsel under this phase of the case. If Mrs. Baker, or the Baker Group, was in possession of the four claims under valid locations, with the assessment work done and sufficient discovery made, the property was not open to location on July 1, 1931. As we have observed, plaintiff does not question the validity of the locations. The same is true of the sufficiency of the discovery.

C. A. Bell was burned to death in 1932 in a fire which destroyed the five-room house he had erected on one of the claims. His testimony was not available at the trial.

The evidence of witnesses establishes the following facts: That Bell was lame but was otherwise strong, was fairly active and able to do considerable heavy work; that he lived on the claims and was actually on them a great part of the time during the year ending on June 30, 1931; that the private road leading to these claims had been washed out by a flood during the summer of 1930; that this was a private road necessary for ingress to and egress from these claims; that after this road was washed out Bell worked on it almost every day he was on the property up to June 30, 1931; that he repaired it and made it usable; that the value of his work on this road was not less than $400 or $500; that in addition to this work on the road he worked in shafts and cuts in actual mining operations on the property.

In the case of *Ring* v. *United States Gypsum Co.*, 62 Cal. App. 87 [216 Pac. 409], the same claim was made by the plaintiff there as is made by the plaintiff here, that the necessary assessment work had not been done. Defendant there, like the defendants here, proved the assessment work had been done largely by work on roads leading to the claims. The appellate court held that the value of this work was properly considered an assessment work which had been performed where it was done for the benefit of the claims, and said:

"The respondent having shown that it had the right to possession of the property through valid locations, the burden of proof was upon the appellant to show that the respondent's right had been abandoned or forfeited. . . .

"Upon this evidence, as we have said, the trial court found that labor expended by the respondent tended directly to the development and benefit of each and all of said claims and to facilitate the extraction of mineral therefrom. This finding was plainly on a question of fact, which the trial court was required in the first instance to determine. (*Big Three Mining & Milling Co.* v. *Hamilton,* 157 Cal. 130, 135 [137 Am. St. Rep. 118, 107 Pac. 301]; *Yreka Mining & Milling Co.* v. *Knight,* 133 Cal. 544, 549 [65 Pac. 1091].)"

Plaintiff argues that as no witness testified in so many words that the road work was for the benefit of the claims, there was no evidence justifying a finding that such road work benefited the Baker Group claims.

We cannot agree with this argument. All of the facts were before the trial judge. The reasonable inference that this road work benefited the mining claims was drawn from those facts. This inference is supported by evidence that this road was used by Bell and others in transporting food and other supplies to the claims and was used as a way in reaching them. When a reasonable inference is drawn from the evidence by the trial judge it cannot be upset on appeal because he might have drawn a contrary inference from the same evidence. (*Mah See* v. *North American Acc. Ins. Co.,* 190 Cal. 421 [213 Pac. 42, 26 A. L. R. 123].)

As the Baker Group was in lawful possession of the four mining claims on July 1, 1931, it follows that the ground was not open for location and the attempted locations by plaintiff of this same ground conferred no rights upon him. (*Belk* v. *Meagher, supra; Ring* v. *United States Gypsum Co., supra.*)

Plaintiff argues that as the evidence shows Mrs. Baker was the owner of the four claims, the portion of the judgment awarding an interest in those claims to others of the Baker Group is contrary to all of the evidence. This may be true but plaintiff cannot complain of it. If he has no interest in the four claims it makes no difference to him to whom they are awarded. No member of the Baker Group is complaining of the judgment.

### Questions Affecting All Respondents

Plaintiff urges that the evidence shows that his Opportunity Claim does not conflict with either the Darling claims or the Baker Group claims and that the trial court

erred in not upholding the validity of his location of Opportunity.

There is no direct finding that the Opportunity Claim conflicts with any of the Darling or Baker Group locations. This is only to be inferred from the findings. Much of the testimony is to the effect that Opportunity does not overlap any other claim. However, if we are correct in concluding that the Opportunity Claim is the same as the old Chippie location it seriously conflicts with one of the Baker Group claims. A map in the record shows that Opportunity (Chippie) overlaps another claim of the Baker Group. However, as the judgment must be reversed with directions on other grounds, this question should be left for determination by the trial court as the evidence is not at all clear on the question of the overlap. Also, the trial court should make a direct finding on the validity, or lack of validity, of that location and of plaintiff's rights, if any, thereunder.

At the close of the case in chief the trial judge, being unable to determine the exact boundaries of the mining claims in controversy, appointed an engineer to make a survey of the claims, map his findings and report back to the court. This was done. The engineer testified at length and produced his map which was introduced in evidence. By affidavits we are informed that an engineer was employed to prepare legal descriptions of the various claims, which he did, and which descriptions were incorporated in the findings of fact.

It is now admitted that these descriptions do not correctly describe several of the' mining claims in controversy here. This question was first directly injected into the case in plaintiff's reply brief.

Defendants have prepared what they believe to be correct descriptions of the claims. They ask us to amend the findings of fact and judgment by striking out the admittedly incorrect descriptions and inserting the suggested correct descriptions. Were we engineers we might be able to determine which are the correct descriptions of the various claims. We are not engineers and under the present status of the case have no authority to call in expert engineering assistance. We cannot determine this question here as we have no confidence in our ability to settle it correctly.

This unfortunate situation does not require that the judgment be reversed generally. An almost similar situation was before us in the case of *Dennis* v. *Barnett*, 30 Cal. App. (2d) 147 [85 Pac. (2d) 916], where the description in the findings and judgment of the mining claims in controversy was admittedly incorrect. We there reversed the judgment with directions to the trial court to amend its findings of fact, either on the evidence before it, or after taking new evidence on the question of proper descriptions, if necessary, and enter judgment in favor of the prevailing party.

A similar order would promote the end of justice here. There could be nothing gained by retrying the general issues of the priorities of titles. The trial judge was most liberal in permitting the introduction of all the evidence on this question in the possession of any of the parties. Those issues were correctly decided. The only error arises from the incorrect descriptions in the findings and judgment and in not directly disposing of plaintiff's Opportunity Claim, if that be error, which question we do not decide.

It is ordered that the judgment be reversed with the following directions to the trial court:

(1) That upon the evidence now before it, if sufficient, or upon new evidence to be taken on that question alone, if such evidence be necessary, the trial court determine the correct legal descriptions of defendant Darling's New Midnight, Gold Bronze No. 4, Rainbow Side, and Midway Mining Claims, and of the Baker Group's Paymaster, Gold Bullion, Coyote, and Bager (Badger) Mining Claims.

(2) That upon such evidence now in the record, or to be taken, if necessary, the trial court determine the correct legal descriptions of plaintiff's attempted locations of Paymaster No. 1, Gold Bullion No. 1, Coyote No. 1, Badger No. 1, Yucca and Opportunity Mining Claims.

(3) That the findings of fact be amended by striking out any incorrect descriptions therein contained and inserting in lieu thereof such correct descriptions, together with any additional correct descriptions of any of the above named claims, or purported claims, not now appearing therein.

(4) That the facts showing title or ownership of plaintiff if any, to Opportunity Mining Claim be found.

(5) That judgment be entered in favor of C. C. Darling to the four mining claims heretofore mentioned as belonging to him, and, in favor of the several members of the Baker Group to the four mining claims heretofore mentioned as belonging to them, using the corrected descriptions in each instance, and that plaintiff's claim to the Opportunity Quartz Mining Claim be determined by that judgment in accordance with the findings made on that question.

Each of the respective parties will pay his own costs of appeal.

Barnard, P. J., and Griffin, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 18, 1939.