(January 8, 1912.)

STACEY W. HUMPHREYS and E. E. EMERSON, Appellants, *v.* IDAHO GOLD MINES DEVELOPMENT CO., Respondent.

[120 Pac. 823.]

FOREIGN CORPORATION—SERVICE ON STATUTORY AGENT—DEFAULT JUDGMENT—VACATING JUDGMENT—SURPRISE AND EXCUSABLE NEGLECT—MINING LOCATION—LOCATION NOTICE—ADVERSE POSSESSION—STATUTE OF LIMITATIONS.

(Syllabus by the court.)

1. Where an action was commenced against a foreign corporation and summons was served upon B., who had been designated in conformity with law as the statutory agent upon whom service of process might be made in this state, and B. did not notify the corporation or any officer thereof of the pendency of the action and took no steps to defend in the action, and a judgment by default was there-

after entered, and the officers of the corporation subsequently learned of the pendency of the action and the entry of judgment, and immediately upon learning such fact moved to set aside the judgment and open up the default and ask leave to answer to the merits of the case, and accompanied such application with a showing to the effect that B., when he was appointed as statutory agent of the corporation, was a stockholder and an officer in the corporation, and that he thereafter sold his stock and ceased to be an officer of the corporation or in any way connected therewith, and that he thought he was no longer the statutory agent of the corporation and that he was confined to his home by sickness at the time service was made upon him, and that he took no steps to advise the corporation of the pendency of the action, and the trial court upon such showing entered an order vacating and setting aside the judgment and default; *held,* that there was no such abuse of the discretion of the trial court in granting the application as would require or justify a reversal of the order.

2.   Where a judgment has been entered by default and a timely application is made to set aside the default and permit an answer to the merits to be filed, and such answer discloses upon its face a good and meritorious defense, as a general rule if there be any reasonable doubt on the matter it will be resolved in favor of granting the application and allowing a trial upon the merits of the case, and on an appeal from an order granting such an application every reasonable presumption will be indulged in support of the order opening default and allowing a trial on the merits of the case.

3.   Where an application is made to set aside a judgment entered by default and permit an answer to be filed, if the facts disclosed by the showing involve purely a question of law, it will involve no discretion on the part of the court, and must be determined solely upon the question of law raised; but where it presents a question of fact as to the diligence of the party or his having been taken by surprise, or being mistaken in a matter of fact, the application will appeal to the discretion of the court, and an appellate court will not disturb the exercise of that discretion unless a clear abuse thereof is shown.

4.   Under the provisions of sec. 2332 of the Revised Statutes of the United States, the claimant to mineral lands of the United States who has been in the open, exclusive adverse possession of a claim for a continuous period equal to that required by the local statute of limitations governing adverse possession of real estate, is relieved of the necessity of making proof of posting and recording a notice of location and such other proofs as are usually furnished by the

county recorder; or, in other words, he is relieved of furnishing the evidence of record title.

5. One who asserts his right to a mineral claim by adverse possession must show compliance with the statute in the matter of discovery and the performance of the annual assessment work, and before he can acquire a patent therefor must also show that he has done the required amount of work on such claim to entitle him to a patent therefor.

APPEAL from the District Court of the Third Judicial District for Ada County. Hon. Carl A. Davis, Judge.

Action to quiet title to mineral claims. Judgment by default in favor of plaintiff. Defendant moved to vacate and set aside the judgment and default. Motion granted and plaintiff appealed. *Affirmed.*

Jackson, Quarles & Taylor, for Appellants.

Defendant must show that it is free from fault, heedlessness or lack of diligence in protecting its rights. Such carelessness, negligence or inattention as could not be predicated of a good, careful business man in matters of material concern to him is not sufficient to authorize the setting aside of the default judgment. (*Garner v. Erlanger,* 86 Cal. 60, 84 Pac. 805; *Sanborn v. Centralia Furniture Mfg. Co.,* 5 Wash. 150, 31 Pac. 466; *Harr v. Kight,* 18 Ida. 53, 108 Pac. 539; *Myers v. Landrum,* 4 Wash. 762, 31 Pac. 33; *Holland Bank v. Lieuallen,* 6 Ida. 127, 53 Pac. 398; *Holzeman v. Henneberry,* 11 Ida. 428, 83 Pac. 497; *Western Loan & Savings Assn. v. Smith,* 12 Ida. 94, 85 Pac. 1084; *Beck v. Lavin,* 15 Ida. 369, 97 Pac. 1028.)

The negligence of an attorney or agent is the negligence of the principal. (23 Cyc. 939, 940, and note 1, citing numerous cases.)

While the proposed answer and cross-complaint with the proposed amendment thereto is voluminous, and much is alleged therein, it appears therefrom that the location of the Vale claim is absolutely void. The claim was not tied, by the location certificate, to any permanent object or natural monu-

ment, and the same was not verified as required by law. (*Van Buren v. McKinley,* 8 Ida. 93, 66 Pac. 936, 21 Morr. Min. Rep. 690; *Dunlap v. Pattison,* 4 Ida. 473, 95 Am. St. 140, 42 Pac. 504; *McBurney v. Berry,* 5 Mont. 300; *McCowan v. Maclay,* 16 Mont. 234, 40 Pac. 602; *Berg v. Koegel,* 16 Mont. 266, 40 Pac. 605.)

"Every consideration of expediency and justice is opposed to opening up of cases in which judgment by default has been entered, unless it be made to appear *prima facie* that the judgment, as it stands, is unjust." (*Parrot v. Den,* 34 Cal. 81.) How could it be made to appear unless the nature of the defense is disclosed? (*Pearce v. Butte Electric Ry. Co.,* 40 Mont. 321, 106 Pac. 563.)

There can be no valid location of a mining claim in the state of Idaho as against the right of adverse claimants, except by compliance with the mining acts of Congress and of the state of Idaho. (*Kramer v. Settle,* 1 Ida. 485; *Garthe v. Hart,* 73 Cal. 541, 15 Pac. 93, 15 Morr. Min. Rep. 492; *Armstrong v. Lower,* 6 Colo. 581.)

A defective location confers no right as against other parties who perfect their location, the latter having exclusive right of possession. (*Belk v. Meagher,* 104 U. S. 279, 26 L. ed. 735, 1 Morr. Min. Rep. 570; *Gleeson v. White,* 13 Nev. 442.)

There can be no right of possession to a mining claim which is not based on a valid location. (*Willeford v. Bell* (Cal.), 49 Pac. 6; *Hamilton v. Huson,* 21 Mont. 9, 53 Pac. 101, 19 Morr. Min. Rep. 274.)

The statute of limitations does not begin to run while the title is in the United States, except as between parties both of whom claim by possessory title only, any state or territorial legislation to the contrary notwithstanding. (*King v. Thomas,* 6 Mont. 409, 12 Pac. 865; *Weibold v. Davis,* 7 Mont. 107, 14 Pac. 865.)

Karl Paine, and Fremont Wood, for Respondent.

"A default inadvertently admitted by a party having a substantial defense presents a case in which great latitude should

be extended to the discretion of the court by which the default was set aside.'' (*Melde v. Reynolds,* 129 Cal. 308, 61 Pac. 932; *Harbaugh v. Water Co.,* 109 Cal. 70, 41 Pac. 792; *Pearson v. Fishing Co.,* 99 Cal. 425, 34 Pac. 76; *Andrus v. Smith,* 133 Cal. 81, 65 Pac. 320; *Nicoll v. Weldon,* 130 Cal. 666, 63 Pac. 63.)

It is better, as a general rule, that the doubt should be resolved in favor of the applicant. (*Watson v. Railroad Co.,* 41 Cal. 17; *Grady v. Donahoo,* 108 Cal. 211, 41 Pac. 41; *Citizens' Nat. Bank v. Branden,* 19 N. D. 489, 126 N. W. 102, 27 L. R. A., N. S., 858.)

Courts almost universally favor a trial upon the merits. (*Barto v. Sioux City Electric Co.,* 119 Iowa, 179, 93 N. W. 268.)

It is clearly a case of surprise, since the judgment was entered without any personal knowledge thereof having been brought home to the officers of the corporation. (*Roberts v. Wilson,* 3 Cal. App. 32, 84 Pac. 216; *Board of Education v. Bank of Commerce,* 4 Kan. App. 438, 46 Pac. 36; *Glaeser v. City of St. Paul,* 67 Minn. 368, 69 N. W. 1101; *Stretch v. Montezuma Min. Co.,* 29 Nev. 163, 86 Pac. 445; *Pelegrinelli v. McCloud River Lumber Co.,* 1 Cal. App. 593, 82 Pac. 695.)

The possession of Osborn and his colocator and their grantees, and their continued occupancy and working of the claim for the period of five years before an adverse claim attached, was made equivalent under the federal statute to a valid location under the United States statute, including the local statutes and the customs and usage of miners. (Lindley on Mines, par. 688; *Altoona Q. M. Co. v. Integral Q. M. Co.,* 114 Cal. 100, 45 Pac. 1047, 18 Morr. Min. Rep. 410; *Upton v. Mining Co.,* 14 N. M. 96, 89 Pac. 283; *Belk v. Meagher,* 104 U. S. 279, 26 L. ed. 735, 1 Morr. Min. Rep. 510; *Anthony v. Jillison,* 83 Cal. 302, 23 Pac. 419, 16 Morr. Min. Rep. 26.)

The Vale location notice and certificate and the facts alleged in the affidavits and answer bring the case directly within the decision in the cases of *Bismark etc. Mining Co. v. North Sunbeam Gold Co.,* 14 Ida. 519, 95 Pac. 14; *Morrison v. Regan,* 8 Ida. 291, 67 Pac. 955, 22 Morr. Min. Rep. 69.

The record shows that for years prior to the locations made by plaintiffs the defendants had been in possession of the property continuously, improving and caring for it and protecting it, doing actual physical labor upon it. This is clearly work, labor and improvements within the meaning of the mining laws of the United States and of this state. (*Lockhart v. Rollins*, 2 Ida. 540 (503), 21 Pac. 413, 16 Morr. Min. Rep. 16; *Altoona Q. M. Co. v. Integral Q. M. Co., supra; Ingersoll v. Scott* (Ariz.), 108 Pac. 460; *Kinsley v. New Vulture Min. Co.*, 11 Ariz. 66, 90 Pac. 438, 110 Pac. 1135.)

AILSHIE, J.—This is an appeal from an order setting aside a judgment and opening up a default. The action was commenced by the plaintiffs, who are appellants herein, for the purpose of quieting their title to the Exchequer No. 1 and Exchequer No. 2 lode mining claims. The complaint was filed on February 9, 1911. Summons thereupon issued and was served the following day. Default was entered on March 9th following. Proofs were thereafter made and judgment was entered on March 13, 1911. The defendant, respondent herein, is a foreign corporation and had designated a resident agent in conformity with the statute on whom service of process might be had. The service of summons was made on the designated agent. On the first day of June following the respondent, through its attorney, made a motion to vacate and set aside the judgment and open up the default, and supported the motion by affidavits and tendered an answer and cross-complaint. After a hearing on the motion and application, the court granted the same, vacated and set aside the judgment and allowed the defendant to answer. The plaintiff thereupon prosecuted this appeal.

Two questions are presented: First, the sufficiency of the showing to constitute either mistake, inadvertence, surprise, or excusable neglect as contemplated by the provisions of sec. 4229 of the Revised Codes; and, second, the sufficiency of the answer to constitute a defense.

1. It is admitted that C. J. Bassett was the statutory agent of the respondent corporation and that he was duly served in

Boise City on February 10, 1911. It further appears that he never notified the corporation, or any of its officers, of the service of process or that an action was pending, and that the corporation was never apprised of the pendency of the action or of the entry of judgment against it, until about the 13th day of April, 1911, when Fremont Wood, as attorney for respondent, was making an examination of the records of Ada county for the purpose of investigating the condition of the title to the property involved in this action with a view to commencing an action on behalf of the respondent, and discovered that this action had been instituted and service had been had and judgment entered thereon. He thereupon communicated with Bassett, who advised him that ''he had been served with complaint and summons in an action, but that there was some mistake, as he, the said Bassett, was not an officer of or other agent of the corporation,'' that Judge Wood ''thereupon advised said Bassett of his mistake and said Bassett immediately brought to deponent [Judge Wood] a copy of the summons and copy of complaint in the action, and thereupon further investigation was made and action taken with a view to procuring an order vacating and setting aside the default and permitting an answer to be interposed.'' Bassett's affidavit, among other things, states that he was one of the original incorporators of the company and was an owner of a small amount of stock in the corporation, and was, soon after the incorporation thereof, designated as the statutory agent of the corporation and that such designation was filed with the secretary of state and the auditor of Ada county; that in the year 1906 he (Bassett) sold all of his stock in the corporation and thereupon ceased to be either a director or officer of the corporation, ''and that deponent assumed that his connection with the defendant corporation was entirely severed, and he had no further thought of his appointment and designation as resident statutory agent of the corporation upon whom service of process might be legally made; that on the 10th day of February, 1911, deponent was served with a copy of the summons and complaint in the above-entitled action at his residence in Boise City in Ada county, Idaho;

that at the time of said service deponent informed the officer making the same that he was not an officer of the defendant corporation, and was not in any way connected therewith and that service upon him would not be good; nevertheless, the said officer afterward, and on the same day, returned to deponent's residence and delivered to him and left with him a copy of the summons and complaint in said action; that deponent was sick and indisposed at the time and for some time thereafter, and was confined to his house with a severe case of la grippe; that he had at the time entirely forgotten that he was the designated resident agent of the defendant corporation, and he did not recall such fact until he was subsequently advised of the record of the appointment in the office of the secretary of state; that deponent's attention was thereafter first called to the matter on or about the 14th day of April, 1911, when he was advised by Fremont Wood that a judgment had been secured against the defendant corporation upon such service and that deponent was the authorized designated agent of the defendant corporation. Deponent then delivered the said complaint and summons to said Wood; that . . . . he took no action in the matter, because he actually and in good faith believed at the time that he had no connection with said defendant corporation, and because he had entirely forgotten the fact of his appointment as resident agent thereof; deponent further says that if he had recalled or in any way realized that he was the agent of the defendant corporation for the service of process, or otherwise, that he should have forwarded said papers to the proper officers of the company, but, for the reasons above given, deponent retained said summons and complaint and advised no officer of the company in relation thereto until his attention was called to the matter by said Wood.''

Appellant submits the following self-evident proposition: ''That foreign corporations must be held to the same diligence as are our own citizens, and must not be held to have any advantage over them in this respect''; that is, in the matter of service of process. And from this proposition counsel argues that the showing made by Bassett would not be a

showing of inadvertence, mistake, or excusable neglect such as would justify vacating a judgment and opening a default were the action one prosecuted directly against Bassett, and that as a consequence the showing is not sufficient to excuse the corporation represented by him. We have no hesitancy in stating as a rule by which the courts of this state should be guided in such matters that a foreign corporation must be held to the same diligence in all respects as a domestic corporation, or as an individual citizen, and so a rule that is applicable to domestic corporations or to the individual is applicable to a foreign corporation. It must also be conceded that service upon the statutory agent is service upon the corporation, and that the action of the agent in reference to the subject of his agency is the action of the principal. The only fact shown by Bassett's affidavit which in any manner tended to raise the question of mistake, inadvertence, surprise, or excusable neglect and to bring the defendant within the discretion of the court is the fact that Bassett thought his agency ceased when he disposed of his interest in the corporation and ceased to be an officer thereof. This, it is true, was a mistake and misapprehension of the effect of his action, and yet it is a mistake or misapprehension which might be honestly and fairly entertained by one who had been connected with a corporation in the manner that Bassett had been associated with this corporation. In this respect, and with reference to this fact, the parallel between an individual and a corporation cannot fairly be drawn, because an individual would have to be crazy or mentally unsound in order not to know his own identity, while an agent might in good faith erroneously conclude that his agency had ceased and thereby fail to represent his principal in a matter in which he is the agent and ought to act and in which the principal would be greatly injured and damaged if no relief could be granted. The mere fact of the *negligence* of the statutory agent of a corporation is not *of itself* sufficient to entitle the principal to relief under the provisions of sec. 4229, but that fact coupled with the further fact, as shown in this case, that the agent honestly, though erroneously, thought that his agency

no longer existed and that the company took action as soon
as it learned of the mistake, was a slight evidence, at least,
on which to set in action the discretion of the trial court in
opening up the default.  The showing of mistake and excus-
able neglect is very slight in this case and extremely meager
on which to rest the order.  On the other hand, however,
under the rule so uniformly recognized, not only by this
court but by many other courts, that every reasonable doubt
in such cases will be resolved in favor of a trial upon the
merits, and that every fair presumption will be indulged in
support of an order opening a default and allowing a trial
upon the merits, we would not feel justified in disturbing the
order of the trial court in this case.  He finds in effect that
the failure to appear and answer was due to mistake, surprise
and excusable neglect, and that finding, being in favor of a
trial on the merits, should not be disturbed where there was
any evidence presented tending to support the order.  (*Holze-
man v. Henneberry,* 11 Ida. 428, 83 Pac. 497; *Western Loan
etc. v. Smith,* 12 Ida. 105, 85 Pac. 1084; *Pease v. Kootenai
County,* 7 Ida. 734, 65 Pac. 432; *Melde v. Reynolds,* 129 Cal.
308, 61 Pac. 932; *Nicoll v. Weldon,* 130 Cal. 666, 63 Pac.
63; *Grady v. Donahoo,* 108 Cal. 211, 41 Pac. 41; *Citizens'
Bank v. Branden,* 19 N. D. 489, 126 N. W. 102, 27 L. R. A.,
N. S., 858.)

Neither the facts of this case nor the rule of law upon
which it is decided should be confused with that class of cases
where the showing fails to present any fact which can appeal
to the discretion of the court.  (*Hall v. Whittier,* 20 Ida. 120,
116 Pac. 1031, and cases cited.)  In other words, showings
which raise only questions of law must appeal to the legal
judgment of a court and not to the discretion of the court
and must be decided purely upon the law.  But where they
present facts which appeal to the discretion of the court, the
appellate court will hesitate to disturb the exercise of that
discretion unless a clear abuse thereof is shown.  (See cases,
*supra.*)

2. The other question presented in this case is the sufficiency of the answer. The appellant contends that the answer is not sufficient to raise an issue.

The defendant by its answer alleges a prior location of the ground covered by the Exchequer No. 1 and No. 2 claims and sets up copies of the location notices, and alleges a discovery and the performance of all the acts and things necessary to be done under the law in order to hold a mining claim.

As a further defense, the defendant alleges that it has been in the open, exclusive and adverse possession of the claims prior to the initiation of the claim of plaintiff for a period exceeding that prescribed by the statute of limitations of this state for adverse possession, and that during such time it continuously occupied and worked the property and placed valuable improvements thereon, and did all the work necessary to hold a mining claim.

Appellant urges that, in the first place, the respondent's location notices are insufficient, in that the description therein does not sufficiently identify the property, and that it does not sufficiently tie the property to any natural object or permanent monument as prescribed by the statute, and that the affidavit to the notice was taken by a person who is not authorized to administer an oath. The view we have reached on the question of adverse possession renders it unnecessary for us to pass upon the sufficiency of the notices and affidavits; but, waiving that, we would not feel inclined to hold the notices as they come to us insufficient, for the reason that the questions raised as to the sufficiency of the notices, are subject, in a measure, to be influenced by the admission of oral testimony. It has frequently been held that the sufficiency of the description of the property or the tie to a natural object or permanent monument is open to explanation by other evidence to show whether or not the property could be definitely identified from such description. (*Morrison v. Regan,* 8 Ida. 291, 67 Pac. 955, 22 Morr. Min. Rep. 69; *Bismark M. G. M. Co. v. North Sunbeam etc. Co.,* 14 Ida. 516, 95 Pac. 14.) Evidence as to the nature of the object

or monument and the physical condition of the country is
often admissible in such cases.

The affidavit was taken before H. W. Dorman, but the loca-
tion notice in the record does not show the official position
held by Dorman. Neither does it show the character of the
purported seal with which he attested his jurat. In the
place where the seal should have been affixed, the following
words are typewritten in parentheses, "Seal of Dep. Min.
Rec." There is also attached a certificate signed by "H. W.
Dorman, Deputy," in which he certifies that he received the
instrument on a certain day and hour and duly recorded the
same in Book 3 of Quartz Claims, at page 112. This is imme-
diately followed by a certificate signed by the county recorder
of Boise county, certifying that he received the same from
H. W. Dorman and filed it for record in his office, etc. The
inference would be that H. W. Dorman was a deputy county
recorder, in which event he would have the authority to ad-
minister an oath. If, as a matter of fact, he was not such an
officer as could administer an oath, that fact may be shown.
(*Van Buren v. McKinley,* 8 Ida. 93, 66 Pac. 936, 21 Morr. Min.
Rep. 690.)

Passing now to the other question, we find it stated thus
in appellant's brief: "There can be no valid location of a
mining claim in the state of Idaho as against the right of
adverse claimants, except by compliance with the mining acts
of Congress and of the state of Idaho." Appellant there-
upon cites a number of cases and enters into a very able
argument in support of the contention that under the pro-
visions of sec. 2332 of the Revised Statutes of the United
States, a mining claim cannot be held by adverse possession
as against another locator, even though that possession has
continued during the full period prescribed by the statute of
limitations for the commencement of such actions, *unless such
claimant has posted and recorded a notice of location as re-
quired by law.* Appellant places special reliance upon *Mc-
Cowan v. Maclay,* 16 Mont. 234, 40 Pac. 602, and *Cleary v.
Skiffich,* 28 Colo. 362, 89 Am. St. 207, 65 Pac. 59, 21 Morr.
Min. Rep. 155. Appellant's contention is supported by the

authority of the foregoing cases, but the great weight of authority seems to be to the contrary.

The supreme court of New Mexico, in *Upton v. Santa Rita Min. Co.,* 14 N. M. 96, 89 Pac. 275, had occasion to consider this question, and there reached the conclusion which is stated as follows by the court, speaking through Mr. Justice Pope:

"We believe that the true rule on the subject is succinctly stated in *Altoona Co. v. Integral Co.,* 114 Cal. 100, 45 Pac. 1047, 18 Morr. Min. Rep. 410, where it is said that 'working for the statutory period before the adverse right exists is equivalent to a location under the act of Congress,' and in *Belk v. Meagher,* 104 U. S. 279, 287, 26 L. ed. 735, 1 Morr. Min. Rep. 510, where it is declared to be the 'equivalent of a valid location.' In other words, a party who has done such work occupies the status and possesses the rights of a locator, no more and no less. As in the case of a holder of a valid location, he has good title as against all but the government, so long as he does the annual labor. . . . . When such party comes to apply for patent, his occupancy must be proven under certain regulations of the Department (2 Lindley, 1714), and, when so proved, if there be no adverse claimant, they are sufficient, as the statute says, 'to establish a right to a patent.' But in this he stands on the same basis as the holder of a location whose application is uncontested. The holder of such a possession, no less than the holder of a location, must possess the necessary qualifications as to citizenship. (*Anthony v. Jillson,* 83 Cal. 296, 23 Pac. 419, 16 Morr. Min. Rep. 26.) He must prove, as well as the locator, the possession of $500 worth of labor or improvements before he can secure patent. (*Capital No. 5 Placer Min. Claim,* 34 Land Dec. Dep. Int. 462, *supra.*)"

It will be seen that the New Mexico court and the authorities there cited hold in substance that continuous, open, adverse possession of mining ground for the full period required by the local statute of limitations, accompanied by an annual performance of the work or improvement on the claim required by the statute, obviates the necessity of making proof

of the posting and the recording of a location notice and supplies the place of record title.

Mr. Snyder, in his work on Mines, vol. 1, sec. 672, in discussing the application of sec. 2332 of the Revised Statutes of the United States to the statute of limitations and the method of acquiring title thereby, says:

"The effect of this statute is to relieve the applicant from the necessity of proving his location of the claim, the location by his predecessors or the furnishing of an abstract of title, as in other cases, but he is required to furnish a duly certified copy of the statute of limitations of the state or territory, together with his own sworn statement showing the facts as to the origin of his title and continuation of his possession of the ground applied for, the area thereof, the nature and extent of the work done, whether there has been any opposition to or litigation regarding his possession of the ground, and if so when the same ceased, whether such cessation was the result of compromise or judicial decree, and any other facts bearing upon the question. . . . .

"This provision relates solely to the procedure relative to proving title. All other steps in the matter of application are the same as heretofore outlined. And where an adverse claim is filed in the land office, the applicant is obliged to defend his rights in a court of competent jurisdiction, the same as though his application were based upon a valid location; but upon the trial, as in the land office, proof of possession and work for a period equal to the statute of limitations would be equivalent to a location. It would seem that he ought also to furnish proof that the claim was actually marked upon the ground by him or his predecessors, and that such markings correspond substantially with the description of the claim as surveyed and applied for. His *status,* however, if an adverse claim is filed, is not so clear. If the owner's boundaries are plainly marked and an actual adverse possession maintained, it would seem to be equally conclusive against the adverse claimant. But that is an independent fact, and the adverse claim must rest upon its own merits. The statute simply undertakes to dispense with

many of the formalities in the way of proof in the absence of an adverse claim."

Mr. Lindley, in vol. 2 of his work on Mines, at sec. 688, takes substantially the same view, and in support thereof places special reliance on the opinion of Judge Sawyer in *420 Mining Co. v. Bullion Mining Co.*, 3 Saw. 634, Fed. Cas. No. 4989, 11 Morr. Min. Rep. 608, 9 Nev. 240. To the same effect, see *Harris v. Mining Co.*, 8 Fed. 863, 3 McCrary, 14, 12 Morr. Min. Rep. 178, 37 L. D. 772, and Snyder on Mines, secs. 155 and 357.

It seems to us that the provisions of sec. 2332 of the Revised Statutes of the United States are intended to obviate the necessity for proof of posting and recording a notice of location in cases where the claimant to mineral ground has been in the actual, open and exclusive possession of the ground for a period equal to that required by the local statute of limitations governing adverse possession of real estate. The adverse possession referred to in the statute is intended to supply the place of an abstract of title and such proofs as are furnished by the county recorder. It still remains, however, for the person who asserts claim by adverse possession to have made a mineral discovery and to have performed the annual assessment work, and to have had the boundaries of his claim so marked and indicated as to afford actual notice of the extent and boundaries of his claim and possession, and to have maintained an actual possession and excluded all adverse claimants for the full period prescribed by the statute, and to have likewise maintained his possession and occupancy during the subsequent period of time in which the adverse locator attempted to initiate his right by locating the claim.

We conclude that the order vacating the judgment and setting aside the default should be affirmed, and it is so ordered. Costs awarded to respondent.

Stewart, C. J., and Sullivan, J., concur.