**KILPATRICK et al. v. GULF PRODUC-TION CO. et al.**

No. 3627.

Court of Civil Appeals of Texas. Beaumont.

March 22, 1940.

Rehearing Denied April 10, 1940.

W. T. McNeill, of Beaumont, Xavier Christ, of Pt. Arthur, and D. E. O'Fiel and Leroy McCall, both of Beaumont, for plaintiffs in error.

Walter C. Clemons, of Houston, C. T. Duff and Lamar Cecil, both of Beaumont, and John E. Green, Jr., and R. J. Lackland, both of Houston, for defendants in error.

WALKER, Chief Justice.

The appeal is by writ of error but the parties will be referred to as appellants and appellee Gulf Oil Corporation. On the 22nd day of November, 1938, J. C. Kilpatrick instituted this suit in trespass to try title, pleading also the several statutes of limitation, to recover of and from Gulf Production Company the title and possession of lot No. 4, a subdivision of the Munson Bowes survey in Jefferson county, containing 45.7 acres of land. On the 25th day of October, 1937, appellant, John Trahan, and certain other parties, intervened, pleading the same issues made by Kilpatrick in his petition. On the 21st day of November, 1938, appellee filed its first amended original answer pleading the general demurrer, general denial, not guilty, and the several statutes of limitation. On the 14th day of February, 1939, on trial to a jury, judgment was entered on an instructed verdict that the plaintiff and intervenors "take nothing by this suit as to the lands sued for herein." Appellee was "given judgment" against Kilpatrick and appellants "for the title and possession of the lands described herein." As we understand the record, plaintiff Kilpatrick did not appeal from the judgment of the lower court; the intervenors as appellants have duly prosecuted their appeal. Kilpatrick, in his original petition, named Gulf Production Company as defendant; by an amended petition filed on the 22nd day of November, 1938, it was alleged that Gulf Production Company had been dissolved, and that its assets and liabilities, and all its properties, had been taken over and were held by Gulf Oil Corporation, "and that the said Gulf Oil Corporation is the real defendant in this cause"; intervenors made the same allegations.

The Munson Bowes survey, containing 320 acres of land, was patented to Munson Bowes on the 19th day of October, 1847, under certificate No. 26 for 320 acres of land issued to Munson Bowes, dated the 7th day of February, 1846. The 320 acres covered by the Munson Bowes patent was surveyed in May, 1845. In February, 1847, before the issuance of the patent, Munson Bowes executed to David Garner the following deed:

"Know all men by these presents that I, Munson Bowes in and for the consideration of the sum of $100.00 to me paid by David Garner the receipt of which is

hereby acknowledged do hereby bargain sell alien, release and convey unto the said David Garner and his heirs forever all my right title interest and claim of to and in my headright certificate No. 26 issued to me by the board of Land Commissioners for Jefferson County for 320 acres of land together with all the land which I would be entitled to by virtue of said certificate.

"To have and to hold the said certificate together with all the land which is or may be surveyed by virtue of said certificate to the said David Garner and his heirs forever."

Appellee, Gulf Oil Corporation, holds the land in controversy—the mineral rights in the land—under a regular chain of transfers from and under David Garner. On this statement, appellee holds the superior title to the mineral rights, for it is immaterial on the issue of title, that Munson Bowes executed his deed to David Garner before the patent issued. Adams & Wicks v. House, 61 Tex. 639; Cagle et al. v. Sabine Valley Timber & Lbr. Co., 109 Tex. 178, 202 S.W. 942, 6 A.L.R. 1426.

Munson Bowes was accidentally killed about the close of the Civil War. Appellants claim through his surviving widow, Katherine Bowes, on the theory that after the death of her husband she lived upon the land in controversy to about 1895, and perfected a title by the statute of limitation of ten years. They make the point that this issue was raised by the evidence as a fact issue for the jury, and that the court erred in instructing a verdict against them on this theory of the case. We have given careful attention to appellants' testimony on their theory of limitation. There was evidence to the effect that Katherine Bowes lived in an old log house on the survey, holding about two acres of land under cultivation, and claimed it as her home, and that this claim continued from "about the time of the death of her husband until her death in about 1895." But as we understand the evidence, it did not raise the issue of continuous possession; the evidence was simply to the effect that she was "off and on" the land during that time. While the testimony of appellants failed to show a continuous occupancy, the testimony of Presto Bowes, a grandson of Katherine Bowes, affirmatively denied continuous possession. He testified (Q. and A. reduced to narrative): "The best that I can remember my grandmother lived off and on on that land ever since before I

was born. I heard her make statements that she had lived other places; she had lived at other places, to farm, or to live on, something like that to work. I know where she lived; sometimes she lived at the forks of the bayou, I don't know how far that is from the Bowes survey—it was somewheres near four miles. There was more than one house on the Munson Bowes survey. At the time of my grandmother's death I don't believe anybody was living on this land. My grandmother lived for a while at the forks of the creek about two miles from the Bowes. As to where my grandmother lived I answer only on hearsay; they say she lived at Honey Point some; she lived off and on with Stockholm; I don't remember that she lived with any of the children except Mrs. Stockholm. She had some children living in Beaumont; she would go to Beaumont and stay with them some. She lived around with the various children, but mainly with Mr. and Mrs. Stockholm."

To perfect title by limitation there must be a continuous occupancy and possession. Pendleton v. Snyder, 5 Tex.Civ.App. 427, 24 S.W. 363. Presumptions cannot be indulged in support of appellants' limitation claim. Woods v. Hull, 90 Tex. 228, 38 S. W. 165.

By the possession of Katherine Bowes, appellants contended on oral argument—the point is not presented by an assignment of error—that they raised the issue of presumption of a deed into Katherine Bowes. That contention is denied. Having executed a valid deed to David Garner, a subsequent deed to his wife would not have vested her with title. Under the authorities, the presumption could not be indulged that Munson Bowes executed a subsequent deed to his wife. Houston Oil Co. of Texas v. McCarthy, Tex. Com.App., 245 S.W. 651, 652. There is not a scintilla of evidence in the record suggesting that David Garner and those under him conveyed the land in controversy to Katherine Bowes. On these conclusions, since appellants as plaintiffs were forced to rely upon the strength of their title, the judgment of the lower court could be affirmed.

But appellee, Gulf Oil Corporation, was given an affirmative recovery of the land; and if appellants' points be conceded, yet under the evidence appellee established title by limitation to the Munson Bowes survey subsequent to 1895.

We give appellants' third proposition: "The evidence showing that although C. C. Roberts had some sort of possession of the M. Bowes 320 acre tract, of which the land in controversy was a part, from some time about 1915 until about May 1923, when he sold the tract to the City National Bank, at and after which there came a break in occupancy until about and after February 1925, and during which time no one was in possession claiming said land for anyone, the trial court erred in holding that the ten years plea of limitation asserted by defendants in error was good, and instructing the jury to find for defendant in error and against plaintiff in error."

C. C. Roberts was one of the grantors in appellee's chain of title. We have quoted appellants' proposition only for the concession that appellees' possession began in 1915. From 1915, Roberts and those holding under him, to and including appellee, were in continuous possession of all the Munson Bowes 320 acres, holding it under a good and sufficient fence, claiming, using and occupying it every day until this suit was filed in 1935. On that point, there was no controversy in the evidence.

■ There was no merit in appellants' contention that there was "a break in the occupancy." This is a legal conclusion drawn by appellants from the undisputed facts. In 1917, Will Hays rented the entire survey from Roberts for a pasture, and took immediate possession. At the time he made his entry, the entire survey was held under a good and sufficient fence, and Hays remained in continuous possession until this case was tried, using, claiming, holding, and occupying the land as a tenant. Because he did not know of the sale of the land to the City National Bank by Roberts, and did not learn of the change in ownership until the early part of 1925, when he learned that it was owned by I. R. Bordages (and on learning of the fact renewed his contract of tenancy with Bordages), appellants contend that there was a break in occupancy. It seems to be their proposition that, though Hays continued in possession under his contract with Roberts, his possession did not inure to the benefit of Roberts' grantee. Appellants' contention is overruled; there was no break or hiatus in the possession through which appellee holds. Remaining in possession continuously under his contract with Roberts, Hays' possession was the possession of Roberts' grantee. He was not holding for himself but for the owner of the title under which he went into possession. Carothers v. Covington, Tex. Civ.App., 27 S.W. 1040; Cobb v. Robertson, 99 Tex. 138, 86 S.W. 746, 87 S.W. 1148, 122 Am.St.Rep. 609; Doe v. Clayton, 73 Ala. 359. On appellants' concession of the beginning of appellee's claim and occupancy in 1915, appellee's title by limitation was perfected prior to 1926.

■■ But both parties have briefed the case on a proposition to the effect that possession did not begin until 1917. If possession began in 1917, then appellants make the following point against appellee's title by limitation to the mineral interest. On February 12, 1925, I. R. Bordages, a remote grantee under Munson Bowes, executed a mineral lease on the Munson Bowes 320 acres to Gulf Production Company. On the 12th day of March, 1926, Bordages executed to Gulf Production Company his mineral deed, filed for record April 20, 1926, conveying to it "all the minerals in, under or upon the Munson Bowes 320 acres of land." The title of Gulf Production Company was regularly transferred to appellee, Gulf Oil Corporation. On these facts, appellants contend that the execution by Bordages of his lease to Gulf Production Company and his conveyance of the mineral rights to Gulf Production Company—both instruments executed prior to the maturing of the statute of limitations of ten years if possession began in 1917—constituted a severance of the mineral rights from the surface, and that the subsequent possession by Hays as a tenant of Bordages, of the surface, did not have the effect of maturing in appellee a title by limitation to the minerals. This proposition is denied. It is the law of this state that a deed executed by one in possession, and who continues his possession the full length of the limitation period, severing the mineral rights from the surface, does not stop the running of the statute of limitation in favor of the mineral rights. Broughton v. Humble Oil & Ref. Co., Tex.Civ.App., 105 S.W.2d 480; Clements v. Texas Co., Tex. Civ.App., 273 S.W. 993; Thomas v. Southwestern Set. & Development Co., Tex.Civ. App., 131 S.W.2d 31.

■ But appellee perfected a title by limitation of five years to the mineral rights, independent of the possession by Hays as a tenant of the surface rights.

 657

On this proposition we take the following statement from appellee's brief:

"I. R. Bordages, the record owner holding the superior title to the land involved, executed an oil, gas and mineral lease to Gulf Production Company on February 12th, 1925. This lease covered the entire 320-acre survey (Doc.Ev., p. 14). Gulf Production Company, whose title Gulf Oil Corporation acquired, went into possession of the Munson Bowes 320-acre survey and began actual drilling operations for the production of oil and gas from said land on February 11th, 1926.

"W. C. Clemons, Gulf Production Company's superintendent in charge of its operations in the Gulf Coast territory, testified that Gulf Production Company began drilling of the first well on February 11th, 1926, and that the drilling of said well continued until March 8th, 1926. This well was completed as a dry hole. However, well No. 2 was begun on March 17th, 1926, and was continously drilled until April 13th, 1927. No production was had from this well. Prior to the completion of well No. 2, well No. 3 was begun on February 8th, 1927, and finished on August 26th, 1927. Well No. 4 was begun on September 14th, 1927, and was finished on March 25th, 1928. Well No. 5 was begun on April 6th, 1928, and finished on May 12th, 1928. Well No. 6 was begun on June 18th, 1928, and was finished as a producer on September 7th, 1928. This well No. 6 produced about 3797 barrels of oil and later, however, this well was reworked; said reworking job having been completed on March 20th, 1931. Well No. 7 was begun on February 20th, 1929, and this well was completed as a producer on June 17th, 1929, and continued to flow until July 19th, 1929. Well No. 8 was begun on November 28th, 1929, and was completed on April 15th, 1930.

"The witness Clemons further testified that from the time Gulf began operations on the land on February 11th, 1926, until March 30th, 1931, Gulf Production Company was continuously drilling and attempting to produce oil on the Munson Bowes 320-acre survey. During all of that time Gulf Production Company had derricks, standard rigs, toolhouses, and the ordinary machinery necessary to drill and produce oil, gas and other minerals.

"The deed under which Gulf Production Company claimed covered the entire 320-acre survey. It was agreed that Gulf

Production Company paid all taxes of every kind when they became due and before they became delinquent, beginning with the year 1926 up to and including the year 1937."

These acts of possession by appellee, subsequent to the date of its lease and deed from Bordages, matured in it title by limitation under the statute of five years. Authorities last above cited; see, also, 1 Summers Oil & Gas, § 138; 1 Am.Jur. 859—Adverse Possession, Sec. 120; Plant v. Humphries, 66 W.Va. 88, 66 S.E. 94, 26 L.R.A.,N.S., 558; Humphreys v. Idaho Gold Mines Development Co., 21 Idaho 126, 120 P. 823, 40 L.R.A.,N.S., 817; 13 A.L.R. 380; 67 A.L.R. 1446; 93 A.L.R. 1236.

Appellants' answer to this conclusion is to the effect that the heirs of Katherine Bowes in 1897 executed among themselves a partition deed, dividing the Munson Bowes survey into seven lots, and that appellee conducted no drilling operations on lot 4. There is no merit in that contention. Appellee, and those through whom it holds, claimed the entire Munson Bowes survey as one tract. It was deeded to them as one tract, fenced, used and occupied by them as one tract. The partition in 1897 was not binding upon appellee and did not withdraw lot No. 4 from its claim of title to the entire 320 acres.

Affirmed.