## WALKER v. LIGHTFOOT.

### No. 9724.

Circuit Court of Appeals, Ninth Circuit.

Dec. 2, 1941.

Rehearing Denied Jan. 14, 1942.

**4**

Richards & Haga and James W. Blaine, all of Boise, Idaho, for appellant.

Edwin Snow, of Boise, Idaho, for appellee.

Before GARRECHT, HANEY, and HEALY, Circuit Judges.

HANEY, Circuit Judge.

Appeal is taken from an order and decree adjudicating title to a power plant and certain personal property to be in appellee.

In 1902, Collin Brothers, Engle & Ford, a partnership, owned a group of patented quartz mining claims known as the Blackbird-Enterprise claims and a placer claim known as the Noble Placer claim situated about 2 miles west of the Blackbird-Enterprise group in Idaho. During that year and the following year, the firm constructed a hydro-electric power plant on the Noble claim at a cost of about $8,000, together with a transmission line from the Noble claim to the Blackbird-Enterprise claims where the power was used to operate an ore-crushing mill.

Appellee acquired the properties about 1912. On August 24, 1920, appellee gave to Mineral Mining Company, the bankrupt corporation, an option and lease upon all the properties. The price of $40,000 was due in installments. The option and lease provided that the option must be exercised before March 1, 1923. The lease and option covered the claims and "all and singular the mines, minerals, lodes and veins within the lines of said claims and their dips and spurs, and all millsites, dumps, plants, tools, machinery, fixtures, improvements, timber, rights, privileges, and appurtenances including water rights and ditches thereunto in anywise belonging".

The bankrupt defaulted under that lease and option, and a new one was entered into between the parties, dated September 24, 1923 and expiring November 1, 1925. While this second option and lease was effective, bankrupt made extensive improvements to the property. The mill was moved to a new site and rebuilt with new machinery but part of the old mill was used therein. The power plant was also moved. It was located on vacant government land about five miles from its former location, and was northeast of the Blackbird-Enterprise claims. The cost of rebuilding the plant, including installation of a new transmission line was about $24,000. The new transmission line was about the same length from the plant to the mill as the old one. The new plant used some of the machinery of the old one.

Thereafter successive leases and options were made by appellee to the bankrupt, there being several modifications of one with respect to time and amounts of payments. The last lease and option was dated May 1, 1935. All leases and options contained substantially the same language as that quoted from the first one. The first lease and option of August 24, 1920, contained the following provision:

"That upon the violation by the Lessee * *, * of any covenant or covenants herein contained, the terms of this lease shall, at the option of the said Lessor, expire and terminate and the same and said premises, with all the appurtenances shall become forfeit to said Lessor, together with all permanent improvements which may have been placed thereon by said Lessee * * *"

Each of the leases and options thereafter entered into between the parties, contained language nearly identical to that just quoted. In addition all leases and options provided that at the expiration thereof or at any time previous upon demand for forfeiture, the bankrupt would deliver to appellee "the said premises with the appurtenances and all improvements in good order and condition".

There was oral testimony that one Carlson, an employee of the bankrupt, who died prior to 1930, had located as a quartz mining claim, the ground upon which the new power plant had been built.

The last lease and option were terminated in 1937 because of the default of bankrupt, and appellee took possession of the claims, mill and power plant.

Prior to October 1, 1932, bankrupt sold some personal property belonging to appellee. Subsequently, appellee consented to the substitution of other personal property for that sold, and bankrupt executed the following document on October 1, 1932:

"For value received the Mineral Mining Co., Hereby, grants, bargains, sells and conveys all of its right, title and interest in and to, one ore car, one portable air compressor, one concrete mixer, one table power saw, one acetylene welding torch and gauges, two screw type hand winches, one mine vent fan and one stope hoist.

"To Exta Lightfoot of Pioneerville, on the above date."

· Appellee did not obtain actual possession of the property until termination of the lease and option.

On April 28, 1939, bankrupt filed in the court below a petition for reorganization under the Bankruptcy Act, as amended, 11 U.S.C.A. § 1 et seq. On February 5, 1940, the court below adjudicated the bankrupt as such.

Appellant as trustee of the estate of the bankrupt filed a petition in the court below praying for an order requiring appellee to appear and show cause why he should not be enjoined from asserting any claim to the power plant and transmission line. By answer, appellee asserted his claim to the power plant and transmission line, and to other personal property listed in the inventory of the bankrupt's estate. He prayed that he be decreed to be the true and lawful owner of all such property.

The trial court held that the power plant and transmission line were improvements which, under the terms of the last lease and option, became the property of appellee; that the power plant and transmission line were appurtenant to appellee's property; and that appellee was the owner of the personal property mentioned. Decree .was entered for appellee. This appeal followed.

■ We pass, with little discussion, appellant's first contention, that the court below should have made separate findings and conclusions instead of commingling the two in a written opinion. Appellant fails to show that he was prejudiced in any manner by the trial court's action, and therefore no reversal for the reason urged will be ordered.

■ Appellant contends that appellee is barred by laches, and estopped by his conduct in failing to claim the property until 1939, from now asserting claim thereto. It is argued that although appellee was a stockholder and vice-president of bankrupt for a short period, and superintendent of bankrupt from 1923 to 1929, he "stood by asserting no claim to the plant while the company was selling its stock and while creditors were extending credit in large amounts to the company, upon the faith that it was the sole owner of the property which stood in its name and which it had acquired at great cost". The difficulty with this contention is that there is no evidence whatever that any stockholder bought stock, or any creditor ex-

tended credit, in reliance on any claim of the bankrupt to this or any other property. It is unnecessary to dwell at length on the nature of an estoppel. It is applied where a party, by his conduct, misleads another who relies on the facts indicated by such conduct, to the latter's disadvantage. 21 C.J. 1113, § 116; James v. Nelson, 9 Cir., 90 F.2d 910, certiorari denied, 302 U.S. 721, 58 S.Ct. 41, 82 L.Ed. 556. There is no proof here of any such facts. Likewise, there is no ground for the assertion of laches. The court below found that appellee resumed possession of the property immediately after forfeiture and exercised dominion thereover. There was evidence supporting such findings, and while there was some contrary evidence, we cannot say that such findings were clearly erroneous. Federal Rules of Civil Procedure, rule 52 (a), 28 U.S.C.A. following section 723c; General Orders in Bankruptcy 36 and 37, 11 U.S.C.A. following section 53, not having delayed the assertion of his rights, appellee is not now barred by laches from again asserting them.

■ Another contention of appellant is that one Carlson had located the ground on which the new power plant was built as a quartz mining claim, and therefore the plant belonged to the bankrupt because it was in possession of the property for more than five years with no adverse claim being made. Appellant's sole contention is that under 30 U.S.C.A. § 38, the evidence was sufficient to establish its ownership, and that the trial court's finding to the contrary was erroneous. The statute, however, requires more than possession. It also requires evidence of "working of the claims for such period" before the evidence is considered sufficient to show ownership. Humphreys v. Idaho Gold Mines, etc., Co., 21 Idaho 126, 120 P. 823, 40 L.R.A.,N.S., 817. There being no evidence that any work was done for five years or any other period, the statute is of no aid to appellant, and the trial court's finding was proper.

■ It is further contended that the power plant was not an "appurtenance" because an appurtenance "is properly confined to things of an incorporeal character". Under the terms of the leases and options, the following became forfeit to appellee: (1) the premises leased; (2) the appurtenances thereto; and (3) all permanent improvements which were placed on the premises or appurtenances by the bankrupt. Under the facts here the bankrupt was under the duty to deliver "all improvements" to appellee. Delivery of the power plant would be of no value to appellee, and would serve no purpose, unless title to it was to pass to him. The provision, therefore, indicates the intention that delivery of the title would be made, if the power plant was an "improvement". The word "improvements" is a very comprehensive term, and includes an "addition" to property. Brotherhood Inv. Co. v. Coal River Min. Co., 4 Cir., 46 F.2d 976, 979. Here the transmission line passed over, and transformers were located on, appellee's property. The power plant has been used solely for the operation of the mill, which admittedly belongs to appellee, although a part of the mill is not located on his property. The power plant, transmission line and transformers constitute a unit for supply of power. As such it became a part of the mine and was an addition thereto. Upon forfeiture, it became the property of appellee. Bedlow v. New York Floating Dry-Dock Co., 112 N.Y. 263, 19 N.E. 800, 2 L.R.A. 629.

■ Finally, appellant contends that the bill of sale above quoted is insufficient to vest title to the personal property covered because (1) it is too indefinite; and (2) no delivery was made. As to the first objection, it clearly appears that the property can be identified, and therefore the description is not too indefinite. 55 C.J. 194, § 148. As to the second objection, under the finding of the court below, sustained hereinabove, appellee took possession of the property upon forfeiture, about 5 years after the bill of sale was made, and before commencement of this proceeding. It was the duty of bankrupt to deliver the goods, and the duty of appellee to accept them. 3 Ida.CodeAnn. 1932, §§ 62-301, 62-302. The property in the goods passed to appellee when the bill of sale was made, regardless of the fact that the time of delivery was postponed. 3 Ida.CodeAnn. 1932, §§ 62-202, 62-203.

3 Ida.CodeAnn.1932, § 62-210 provides in part: "Where a person having sold goods continues in possession of the goods * * * and such retention of possession is fraudulent in fact or is deemed fraudulent under any rule of law, a creditor or creditors of the seller may treat the sale as void."

3 Ida.CodeAnn. 1932, § 54-907, provides in part: "Every transfer of personal property * * * is conclusively presumed, if

made by a person having at the time the possession or control of the property, and not accompanied by an immediate delivery and followed by an actual and continued change of possession of the things transferred, to be fraudulent, and therefore void, against those who are his creditors while he remains in possession, and the successors in interest of such creditors, and against any persons on whom his estate devolves in trust for the benefit of others than himself * * *."

See, also, 27 C.J. 577, § 297.

In 27 C.J. 583, § 308, it is said: "While there are some decisions to the contrary, the rule is that a sale of chattels is not rendered fraudulent in law as to creditors by the fact that the vendor is permitted to remain in possession after the sale as lessee of the chattels sold. The question in such case is one of fraud in fact and is for the jury."

There is no contention here that there was fraud in fact in the sale. Likewise, it clearly appears that the property transferred was to be covered by the lease and option. While Idaho does not seem to have decided which of the above quoted rules it will follow, we believe it will follow the rule in California which has a similar statute, and holds that in such circumstances the sale is not fraudulent. F. Chevalier Co. v. Collins, 184 Cal. 648, 195 P. 44.

Affirmed.